HENRY W. RICHARDS v. WASHINGTON FIRE AND MARINE INS. COMPANY.

*Fire insurance—In suit on policy, company confined to objections to payment of loss made before its commencement—Where court instructs jury that fraudulent concealment, or misrepresentation, bars recovery, a verdict for plaintiff negatives such conduct—Applicant may deal with policy-writing agent, and rely on his conduct, as with officers of company—Need not tell such agent what he assumes to and does know—Nor state in application what agent knows, and treats as immaterial—Where, with knowledge of facts relied on to defeat a recovery, such agent prepared an application satisfactory to himself, and acted on his own knowledge in taking risk, plaintiff must recover in absence of collusion or fraud—Failure to mention existence of brick oven in building, not presumptively fraudulent —"Shop", "Store", "Bakery", "Restaurant", defined.*

1. In its defense to a suit brought by a policy holder, a fire insurance company is confined to the objections made to paying the loss *before* the commencement of the suit. *Castner v. Farmers' Mut. Fire Ins. Co. of Van Buren Co.*, 50 Mich. 273.

2. Where the trial judge charged the jury, in a suit brought by a policy holder against a fire insurance company on his policy, that if plaintiff deceived or colluded with the agent of the company, or knowingly or purposely made any misrepresentations, or withheld any material facts on taking out his policy, and thereby obtained *lower* rates of insurance, he could not recover,—a verdict in favor of plaintiff necessarily *negatives* any such conduct on his part.

3. Where a local agent has authority to issue policies of insurance *himself*, the applicant, in the absence of fraud, may generally deal with him as he would with the officers of the insurance company, and rely on his conduct as he would on theirs. He is not bound to tell such an agent what he *assumes* to know, and *does* know; or to assume that it is his duty to consider as material, and to express in words, what the agent *knows*, and does *not* treat as material or necessary to be stated in the application for insurance.

4. In a suit on an insurance policy by the assured, where the undisputed facts show that the agent who issued the policy had full knowledge of every fact relied on by the company to defeat a recovery, and that with such knowledge he prepared such an application as *he* regarded as proper and complete, and then acted upon his *own* knowledge in taking the risk,—the plaintiff must recover in the absence of proof of

collusion between him and the agent to commit a fraud upon the company.

5. The Court has no right to say, as a matter of law, that a brick oven is so unusual that a failure to mention its existence in a building sought to be insured is presumptively fraudulent.

Error to Cass. (Smith, J.) Argued February 18, 1886. Decided April 8, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*E. C. Chapin,* for appellant:

While it is true that the knowledge of the agent is treated in many cases as that of the principal, and this rule has been frequently applied in actions on insurance policies (*Peoria M. & F. Ins. Co. v. Hall,* 12 Mich. 213 ; *Ætna Live Stock F. & T. Co. v. Olmstead,* 21 Id. 246 ; *Security Ins. Co. v. Fay,* 22 Id. 473), yet it appears in all of these cases that the assured relied wholly upon the advice and skill of the agent, and was well entitled to protection ; but there is a class of cases in which a different view has been taken by the court, and which are peculiarly applicable to this case : *American Ins. Co. v. Gilbert,* 27 Mich. 439 ; *Van Buren v. St. Joseph Co. Village Fire Ins. Co.,* 28 Mich. 405 ; but this rule which charges the principal with the knowledge of the agent is for the protection of *innocent third* persons ; and if a party colludes with an agent to cheat the principal, the latter is not responsible for the acts or knowledge of the agent : *Nat. Life Ins. Co. v. Minch,* 53 N. Y. 144 ; May on Ins. 627 ; *Rockford Ins. Co. v. Nelson,* 65 Ill. 415.

Again : the more recent decisions are holding the assured to a stricter responsibility, and where local agents draw applications, their acts are regarded as those of the assured : *Pottsville Mut. F. Ins. Co. v. Fromm,* 100 Penn. St. 347–354.

*Howell & Carr,* for plaintiff:

The defendant's objection, made through its adjuster and State agent, to paying the loss, was that the application made no mention of a brick oven in the building ; and no other objection was urged until after this suit was brought, and in such suit defendant is confined to such objection : *Castner v. Farmers' Mut. F. Ins. Co.,* 46 Mich. 15 ; 50 Id. 273.

By the express terms of the policy the application is no part of it, nor can it be used to avoid the policy, except upon proof of action taken upon faith of it : *O'Brien v. Ohio Ins. Co.*, 52 Mich. 131; and it could not be a warranty : *Protection Co. v. Harmer*, 2 Ohio St. 464; *Owens v. Holland P. Ins. Co.*, 56 N. Y. 565; and to amount to a representation it must have been made before the policy issued : Wood on Fire Ins. page 343, § 145 ; *De Wees v. Manhattan Ins. Co.*, 5 Vroom, 244; *LeRoy v. Park Ins. Co.*, 39 N. Y. 56. A misrepresentation, to be of any avail, must inure to the date of the transaction in question : Kerr on Fraud and Mistake, page 75 ; and must have been relied upon and had influence in determining the transaction : Id. 73 ; 2 Parsons on Contracts (5th Ed.) 773 ; *Kost v. Bender*, 25 Mich. 515; *Hall v. Johnson*, 41 Mich. 286.

The uncontradicted facts show that Clisbee was the *full* agent of the company, having power to bind it by any act within the apparent range of his employment : *Fire Ins. Co. v. Building Co.*, 43 N. J. L. 653.

Plaintiff gave to defendant's agent all the information required, and had him personally inspect the risk. He was the agent of the defendant, and not of the plaintiff : *Rowley v. Empire Ins. Co.*, 36 N. Y. 550; *Ins. Co. v. Williams*, 39 Ohio St. 584 ; *Woodbury v. Charter Oak F. & M. Ins. Co.*, 31 Conn. 517; *Combs v. H. S. & —— Ins. Co.*, 43 Mo. 149; *Ins. Co. v. Wilkinson*, 13 Wallace, 223 ; and his knowledge was binding upon the company : *Fishbeck v. Phœnix Co.*, 54 Cal. 422 ; and the assured has a right to rely upon the statement of such an agent, and entrust to him the making of the application for him : *Rowley v. Empire Ins. Co.*, 3 Keyes, 557 ; *Plumb v. Cattaraugus Mut. Ins. Co.*, 18 N. Y. 392 ; *Mowry v. Rosendale*, 74 N. Y. 363 ; *F. & M. Ins. Co. v. Chestnut*, 50 Ill. 111; *Home Co. v. Garfield*, 60 Id. 124; *Andes Ins. Co. v. Fish*, 71 Id. 620 ; *Miner v. Phœnix Fire Ins. Co.*, 27 Wis. 693–7 ; *McBride v. Republic F. Ins. Co.*, 30 Id. 567 ; *Melcher v. Phœnix F. Ins. Co.*, 38 Id. 670 ; *Hartford Protection Fire Ins. Co. v. Harmer*, 2 Ohio St. 464–8 ; *Ins. Co. v. Williams*, 39 Id. 584 ; *Hill v. Lafayette Ins. Co.*, 2 Mich. 476–486 ; *Peoria M. & F. Ins. Co. v. Hall*, 12 Id. 202 ; *Id. v. Perkins*, 16 Id. 380 ; *Ætna Live Stock F. & T. Ins. Co. v. Olmstead*, 21 Id. 246 ; *North American F. Ins. Co. v. Throop*, 22 Id. 146, 155, 160 ; *Mich. State Ins. Co. v. Lewis*, 30 Id. 41–5 ; *Westchester Ins. Co. v. Earle*, 33 Id. 143 ; *Aurora F. & M. Ins. Co. v. Kranich*, 36 Id. 289 ; *Hurd v. St. Paul F. & M. Ins. Co.*, 39 Id. 443; *Kitchen v. Hartford F. Ins. Co.*, 57 Id. 135.

CAMPBELL, C. J.    March 7, 1885, plaintiff procured insurance from defendant's agent, Judge Clisbee, at Cassopolis, on a brick building in that place, consisting of two stores on the ground floor and a residence above, the latter being occupied by plaintiff and his family.    One of the stores was occupied by G. V. Bailey as a general store for dry goods, groceries, and other articles.    The other was used as a restaurant and bakery, and had a large brick oven in the basement.

On the twentieth of April, 1885, the premises were destroyed by fire, which originated in Bailey's store, and for which plaintiff was in no way responsible.

After the fire plaintiff made his proofs, and the *only* objection suggested on behalf of defendant against his right to the insurance money was the omission to state in his application for insurance the existence of the brick oven.

Having sued upon the policy, a plea was put in, with notice under the general issue that the policy was issued on a written application, wherein he covenanted that his answers and the survey thereon were a just and true explanation of everything material to the risk, and that they formed part of the policy, and in case any untrue answer was given it was to be void; that there were two material misrepresentations,—one as to the proximity of a wooden building represented as five feet distant, and the other as to the use of the building for stores and residence; and that by means of these statements he secured the policy, and led defendant to carry the risk, at inadequate rates.

Upon the trial it appeared that the policy did not make any reference to the application, although it contained a clause that whenever a policy did refer to one it should be a part of the policy, and operate as a warranty.    It contained the usual clauses concerning the effect of false statements and material omissions in any shape.

It further appeared, without dispute, that the agent at Cassopolis was not only generally familiar with the premises, but examined them for himself, saw the oven and its surroundings, and knew the relative positions of the buildings.

He drew up and filled the application and plan in all its parts himself, without any help or suggestion, and plaintiff signed it.    There was a conflict of testimony concerning the date of the application,—whether made before or after the issue of the policy.    There was no question but that the agent acted in making out and delivering the policy on his own knowledge, and not in reliance on the application, concerning the character, position, and occupancy of the building.    The policy was not issued at the home office, or at any general agency, but the Cassopolis agent himself decided upon it, and issued it upon his own authority. .   He testified that he did not regard the oven as increasing the risk.

The general State agent made no objection to payment except because of the oven.    He did not, in his testimony, state that it increased the risk, but, in a general way, referred to the rates as less than he thought the company would have taken on the brick building, and that they would have added further to them had they known the, nearness of the wooden building.    As under the decisions no reliance can be had on objections not specified, no reference need be had to any of the other claims of omission or false suggestion, although the court charged that if plaintiff deceived the agent, or colluded with him, or knowingly or purposely made any misrepresentations or withheld any material facts, and thereby obtained lower rates, he could not recover.    The jury must have negatived any such conduct.

The court held that if the application was made out after the policy, it could not bear upon the case; and this, we think, was correct, as it only appears in the pleadings as made before the policy and forming a part of it.    It was also held that, in the absence of fraud, plaintiff should recover.    This was also correct, as the plea rested entirely on that defense.    But, in connection with the other parts of the charge, the jury were given to understand that any known material misrepresentation or concealment would amount to such fraud, as defined; and they were sufficiently informed of their duty, provided the charge was right in regard to the other matters now to be referred to.

The whole controversy, although requests were presented in different forms, really turned on how far plaintiff could rely on the fact that Judge Clisbee drew up the application, as on all other points the fault was negatived by the jury.

The two alleged errors in the description were the distance between an adjacent wooden building and the brick building, and the represented use of the brick building.

The only thing in the application bearing on proximity is a printed blank of diagram, divided into squares of ten feet each. Upon that diagram the size of each building is marked out, and colors are used to designate the material. In the printed record two of these diagrams are inserted—one in the application, and one in the agent's report to the company. No questions are asked or answered in the application on the subject. In both diagrams the wooden building would appear to be about five feet from the brick; but in both of them two other wooden buildings are represented as nearly ten feet nearer than they actually are. In the agent's report, made immediately after the policy issued, the questions are more searching than those on the application, and the answers are explicit, and it appears just how far off each wooden building was, and the building nearest is stated to be adjoining. The company itself could not mistake this information, assuming that it could have objected to a misstatement in the application.

The other objection is that the use of the building is stated to be for stores and residence, and that a restaurant and bakery is not a store.

The question presented cannot be regarded as whether this language is technically accurate. It can only be material if so inaccurate as to mislead to the extent of probable prejudice and injury. The word "store" is commonly used in this country as the equivalent of the English word "shop," which is very generally applied to what we call a "bakery," as it is to any room or building where any kind of article or traffic is sold. The American word "store" applies to the building,—the name more strictly belonging to the collection of wares within it. The English "shop" is the building

itself, as distinguished from a place of sale which is open, like a "stall :" Rich. Dict. "shop." A "restaurant" has no more defined meaning, and is used indiscriminately for all places where refreshments can be had, from the mere eating-house or cookshop to the more common shops or stores, where the chief business is vending articles of consumption and confectionery, and the furnishing of eatables to be consumed on the premises is subordinate.

The testimony does not indicate that a restaurant or a bakery is more dangerous than any other grocery or provision store, and the fact that the impropriety of using the phrase "store" does not appear to have occurred to either the general or local agent, or to any one else, until this suit was brought, is reason enough against our attempting to declare, as matter of law, that the word is dangerously misleading, and a misrepresentation. Those gentlemen are both intelligent, and acquainted with the usages of correct language; and if dictionary makers fail to approve certain uses, it does not follow that the people who resort to them are wrong, or that they do not know what they mean by their own terms.

Neither have we any right to say, as a matter of law, that a brick oven is so unusual that a failure to mention its existence in a house or other building is presumptively fraudulent. It is not many years since such ovens were found in all comfortable dwellings, as well as in bake-shops and other places where cooking is done, and their presence was taken for granted, and not deemed hazardous.

These matters, therefore, cannot be dealt with theoretically. The burden was upon defendant to show that plaintiff had made material concealments or misrepresentations. It is therefore of the first importance to know how far he can rely on the action of Judge Clisbee, the agent who insured him.

This case stands before us entirely free from any of the complications arising from the duty of members of mutual insurance companies to know their rules and by-laws and the conditions of membership. Neither is it affected by those rules which have sometimes been applied to applications which are to be transmitted elsewhere to procure insurance

from a home office. Where a local agent has authority to issue policies himself, the applicant for insurance, in the absence of fraud, may generally deal with him as he would with the officers of the insurance company, and rely on his conduct as he could on theirs. He was not bound, in the present case, to tell the agent what the agent assumed to know, and did know; or to assume that it was his duty to consider as material, and to express in words, what the agent knew, and did not treat as material or necessary to be written down. When the undisputed facts show, as they did here, that there is not a single fact relied on that was not fully known to Judge Clisbee, and that he, with knowledge of them all, prepared such an application as he regarded as proper and complete, and then acted upon his own knowledge in taking the risk, there is nothing left of the case, and all the other questions become immaterial, unless he and plaintiff were in collusion to commit a fraud, which was not charged by the company, and which is negatived by the verdict. Our own decisions cited on the argument need not be repeated on this head.

The views we have expressed render it needless to go over, one by one, the assignments of error, which are all covered by them. We think the jury could have been allowed to reach no other conclusion, and the judgment must be affirmed.

The other Justices concurred.