## Abraham D. Cecil v. Hamer H. Green.

|60    61|
|161s 265|

1.   CIVIL RIGHTS—*What is Not Included—Soda Fountains.*—An apartment where only refreshing drinks are sold at a single stand (a soda fountain), by the glass, does not come within the specific designation of a restaurant, eating house, or place of public accommodation within the meaning of the "act to protect all citizens in their civil and legal rights," commonly known as the "Civil Rights Act."

**Trespass on the Case,** under the Civil Rights Act. Appeal from the Circuit Court of McLean County; the Hon THOMAS F. TIPTON, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

CHARLES M. PEIRCE, attorney for appellant.

ROWELL, NEVILLE & LINDLEY, attorneys for appellee, contended that the civil rights statute is highly penal, and is therefore to be strictly construed. It can not be extended so as to include any kind of business not mentioned. The language, "and all other places of public accommodation and amusement," can not, under a well recognized rule of interpretation, extend to any places of business except the places of like character with those enumerated.

The license which every retail dealer impliedly gives to the public to enter his shop for the examination of his goods is always subject to revocation. Cooley on Torts, Ch. 10, 305; Burton v. Schoff, 1 Allen (Mass.), 133; Woodard et al. v. Sealey et al., 11 Ill. 157; Wood v. Leadbitter, 13 M. & W. 838.

It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rest upon reason or is the result of a whim, caprice, prejudice, or malice. Cooley on Torts, 278–286, and cases cited.

Otherwise, when the business engaged in is a *quasi* public business. Id.; Munn v. Illinois, 94 U. S. 115, 125.

Theaters and other places of public amusement exist

wholly under the authority and protection of State laws, their managers are commonly licensed by the State, and in conferring the license it is no doubt competent for the State to impose the condition that the proprietor shall admit and accommodate all persons impartially; and the power of the State to regulate the business of an inn-keeper would be at least equally plain.   Cooley on Torts, 285.

It is not competent for the legislature to select owners and operators of one kind of property and provide that they shall bear burdens not imposed on other owners of property and prohibit them from making contracts which it is competent for other owners of property or employers of labor to make.   Frorer v. The People, 141 Ill. 171; Ramsey v. The People, 142 Ill. 380; Millet v. The People, 117 Ill. 291.

The common law casts no duty on a mere tradesman or retailer to exercise his trade for, or to sell his wares to, such as should request him.   Munn v. Illinois, 94 U. S. 115, 125.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellant, a colored man, brought this action in case against appellee, under sections one and two of the Civil Rights Act.   (Secs. 42 i and 42 j of Ch. 38, of the R. S.) The first of these declares: "That all persons within the jurisdiction of said State (of Illinois) shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of inns, restaurants, eating houses, barber shops, public conveyances on land or water, theaters and all other places of public accommodation and amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens;" and the second gives the right of action for a violation of any of the provisions of the first by "denying to any citizen, except for reasons applicable alike to all citizens of every race or color, and regardless of color or race, the full enjoyment of any of the accommodations, etc., in said section enumerated, or by aiding or inciting such denial."   The judgment below was for the defendant, upon demurrer sustained to the several counts of the declaration; and plaintiff appealed.

Cecil v. Green.

The first count alleges that defendant occupied a certain building in Bloomington, and was engaged therein in the drug business; and in addition thereto kept for sale certain refreshments, consisting of soda-water, ice-cream soda-water, ginger ale, phosphate, cherry phosphate, root beer, etc.; that on, etc., plaintiff entered said place of business where said refreshments were kept for sale to the public, and called for cherry phosphate, and although he tendered the price therefor was informed by the defendant that by reason of his color he could not purchase refreshments there of said defendant, and the article so called for was refused.

The second charges that defendant kept a place of public business and held out his business to the public, and refused to plaintiff, solely on account of his color, the refreshment applied for as stated in the first; and the third that he was engaged in running a soda fountain, which was run for and was a place of public accommodation.

For all present purposes the allegation as to the drug business may be disregarded, since it is not alleged that plaintiff was denied any right he claimed in the place as a drug store.   It is to be regarded simply as a place in which defendant ran a soda fountain and kept for sale the "refreshments" specified.

This description is not in the terms or by any of the designations employed in the statute, unless it be those used in the third count, viz., "a place of public accommodation;" nor are any other facts averred to show it within the meaning of either.   It is asserted that those stated do show it was a "restaurant," or "eating house," which is Webster's only definition of a restaurant, and which is itself defined as "a house where provisions are sold ready cooked, and generally eaten on the premises."   Here the whole business was done in a single apartment where no "provisions," ready cooked, or cooked to order, were sold or to be eaten. We are therefore of opinion that an apartment where only refreshing, soft drinks are sold, at a single stand and by the glass, does not come within the specific designation of a restaurant or eating-house.

For general description the language of the statute is, "other places of public accommodation and amusement." There is no pretense that this was a place of amusement; but it is said that the description covers two distinct classes of places—those of public accommodation and those of public amusement. If this should be conceded, the only question is whether the declaration shows, by any facts averred, that this soft drink saloon was a place of "public accommodation," within the meaning of the statute.

Referring to Webster we find that "accommodation" is "whatever supplies a want or affords ease, refreshment or convenience; anything furnished for use." This would include every article of property that is a legitimate subject of sale; and every saloon, shop, store or place where any are kept for sale to such as seek to buy, is as open to the "public" as was appellee's. But we do not understand that places where dry goods, groceries, hardware or other like articles of accommodation, whether of necessity, luxury or fancy, such as endure or perish in the using, are so kept, are places of "public accommodation" under the Civil Rights Act. So far as they are open to the public they are generally so only by implied license of the proprietors, which they may revoke or limit as they please. Both the place and the articles are subject to their control and disposition for lawful purposes as fully and completely as their dwellings and household furniture. They open and close to suit their own convenience; sell to whom they will, at whatever price they may agree upon, and refuse whom they will for whatever reason satisfies them. The property is their own, of which they are not to be deprived but by their own consent or due process of law. Such is the rule. The exceptions intended by this general description in the statute are of a few classes, whose business is designed to accommodate men in masses and not merely as individuals. Its object was to prevent their exclusion of individual citizens from such masses in the enjoyment of the accommodations, advantages, facilities and privileges so afforded by the business, for difference of race or color, or for any reason not

applicable alike to all citizens. This providing for a mass, changing in its individual constituents from day to day, but always a mass, makes the place of their accommodation a public place and therefore subjects it to such legislation.

Appellant, in running his soda fountain, dealt not with masses as such, but with individuals, one at a time, just as merchants do generally. All the accommodation sought or furnished was a glass of drink. That which accommodated one never accommodated another. It was therefore not public or common, but private, exclusive and individual to each. Webster says of the term, defined as above quoted, that it is "chiefly used in the plural, as the accommodations at a public house," and the presumption is it was here used to signify such. It is plural in the preceding part of the section, and the singular, in the description of the "places" intended, plainly has reference to the same thing. If it is not the public character of the accommodation that makes the place a public place, then every place in which any article is sold to individuals generally is within the statute, and no merchant in any line of trade can lawfully decline to sell to any citizen for any reason not applicable alike to all. We do not so understand the law, and hold that it does not apply to this case. Judgment affirmed.