CITY OF FORT SMITH *v.* GUNTER.

Opinion delivered February 17, 1913.

1. MUNICIPAL CORPORATIONS—REGULATION OF PLACES OF PUBLIC ENTERTAINMENT.—A charge by a city of $25 per year, $15 for six months, and $3 per month as a license fee on restaurants is not an unreasonable charge. (Page 375.)

2. SAME—SAME—Section 5454 of Kirby's Digest, which confers upon cities the right "to regulate hotels and other houses for public entertainment," gives the right to regulate restaurants. (Page 377.)

3. SAME—RESTAURANT.—A place where appellee kept "tables and chairs and fed any and all persons who desired to eat in his place of business, furnishing them meals at any and all hours" is a restaurant, and may be regulated by a city under section 5454 of Kirby's Digest, which provides for the regulation of "hotels and other houses for public entertainment." (Page 377.)

4. STATUTORY CONSTRUCTION.—Section 5454 of Kirby's Digest, which provides for the regulation by cities of "hotels and other houses

for public entertainment," will be construed to mean the right to regulate hotels, and other houses for public entertainment different from hotels, which shall include restaurants. (Page 378.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

*Vincent M. Miles,* for appellant.

1. The license fee provided for by the ordinance in question is not unreasonable, considering the population of the city of Fort Smith and the number of hotels and other houses for public entertainment therein, and is, therefore, not a tax for increasing its revenues. 52 Ark. 301; 56 Ark. 370; 70 Ark. 28.

2. Appellant has the power under the statute to regulate a restaurant, and the place in controversy here is a "house for public entertainment" within the meaning of the statute. Kirby's Dig. § 5454; 77 Mo. App. 596; 30 N. H. 268; 81 N. Y. App. Div. 530, 81 N. Y. Supp. 384.

*T. S. Osborne,* for appellee.

The authority granted by the statute only applies to hotels and other like houses of public entertainment, such as inns and taverns. Under the doctrine of *ejusdem generis,* which applies here, restaurants are not included, and under the rule of law that the authority to enact the ordinance must plainly appear from the statute, and that it will not be inferred from terms of uncertain or doubtful import, the ordinance in question can not stand. Kirby's Dig. § 5454; 45 Ark. 454 and authorities cited; 61 Ark. 494, 502; 3 Words & Phrases, 23, 29; 4 *Id.* 3624; 4 *Id.* 3349; 23 Cyc. 117; 54 How. Pr. 327; 34 Cyc. 1677, note 20; 1 Tilt. (N. Y.), 193; 54 Barb. 311; 3 Abb. Pr. (N. S.), 26, 35; 10 Fed. 4, 6; 46 Mo. 593, 594; Beale on Hotels, § 11; *Id.* § 15; *Id.* § 35; 2 Abbott, Mun. Corp. 982; 637 note; 2 Lewis Sutherland, Stat. Con. § § 422, 429; 49 Mo. 559; 100 Am. Dec. 304; 34 Ga. 186.

2. The ordinance is void, being a manifest enactment for the purpose of raising revenue. 43 Ark. 82; 70 Ark. 28.

SMITH, J.   John Gunter, the appellee, was fined in the police court in the city of Fort Smith for running a restaurant without a license in violation of ordinance 970 of that city, the portion of which, applicable to the case at bar, is as follows:

"Be it ordained by the city council of the city of Fort Smith, Arkansas:

Section 1.   That the license hereinafter named shall be fixed, imposed and collected at the following rates and sums, and it shall be unlawful for any person, or persons, to exercise or pursue any of the following vocations or business in the city of Fort Smith, Arkansas, without having first obtained a license therefor from the proper city authorities and having paid for the same in gold, silver or United States currency.

\*      \*      \*      \*      \*      \*      \*      .\*

Sec. 55.   Restaurant.   For each restaurant $25 per annum, $15 for six months, $3 per month."

The cause was tried in the court below, after an appeal had been taken from the judgment of the police court of the city of Fort Smith, upon the following agreed statement of facts:

"It is agreed that the defendant, Gunter, keeps a house on Garrison avenue in the city of Fort Smith, in which he has and causes to be cooked and prepared barbecued meats, and sells and delivers same to all parts of the city, keeps tables and chairs and feeds any and all persons who desire to eat in his place of business, furnishing them meals at any and all hours; that he keeps his place of business open, and barbecued meat and bread, milk and coffee with proper dishes and plates and other means for serving the barbecued meat and bread and milk and coffee are furnished; that on the sidewalk and front window he has exhibited the following sign in large letters:

Stop and try our barbecue.
Dinner, 15 cents.
Coffee, 5 cents.
Milk, 5 cents.

City barbecue, family orders a specialty.

That at the time of his arrest and prosecution in the city court, he was carrying on the business as detailed above; that he had no license from the city of Fort Smith to carry on said business.

The court made the following declarations of law and findings of fact:

"That cities and towns have no power to tax or license except such as is granted by the laws or Constitution of the State.

"2. That under section 5454 of Kirby's Digest, of the statute granting cities and towns power 'to regulate hotels, and other houses for public entertainment,' the city of Fort Smith has no power to tax a restaurant, and the ordinance attempting to do so is void; that a restaurant is neither a hotel nor a house for public entertainment.

"3. That if such power to tax restaurants did or does exist, the defendant, under the agreed statement of facts in this case, was not running a restaurant, but was engaged in the cooking and sale of barbecued meats, and that the feeding of the public, as shown by the agreed statement of facts, is or was incident to his business of preparing, cooking and selling barbecued meats.

"Wherefore, it is considered, ordered and adjudged by the court that the defendant be discharged."

The parties hereto agree that the case presents three questions for consideration as follows:

"1. Does a charge of $25 per year, $15 for six months, and $3 per month for 'hotels and other houses for public entertainment' amount to a tax, or is it a regulation?

"2. Under the power 'to regulate hotels and other houses for public entertainment' has the city of Fort Smith the power to regulate a restaurant?

"3. Does such a place as is here agreed on, where the appellee kept 'tables and chairs and fed any and all persons who desired to eat in his place of business, furnishing them meals at any and all hours,' amount to a

'house for public entertainment' within section 5454 of Kirby's Digest of the Statutes of Arkansas?''    Questions similar to the first question have been discussed in a number of decisions of this court.  In the case of *City of Fayetteville* v. *Carter,* 52 Ark. 301, which involved the validity of an ordinance in the city of Fayetteville, forbidding all persons to drum or solicit patronage from persons who arrive on trains for any hotel or boarding house, without having first obtained a license to do so, by paying therefor the sum of $12.50, the court said:

"The power to license and regulate, granted by the statute, was conferred solely for police purposes; and municipal corporations have no right to use it as a means of increasing their revenues.  They can require a reasonable fee to be paid for a license.  The amount they have a right to demand for such fee depends upon the extent and expense of the municipal supervision made necessary by the business in the city or town where it is licensed.  A fee sufficient to cover the expense of issuing the license, and to pay the expenses which may be incurred in the enforcement of such police inspection or superintendence as may be lawfully exercised over the business, may be required.  It is obvious that the actual amount necessary to meet such expenses can not, in all cases, be ascertained in advance, and that 'it would be futile to require anything of the kind.'  The result is, if the fee required is not plainly unreasonable, the courts ought not to interfere with the discretion exercised by the council in fixing it; and unless the contrary appears on the face of the ordinance requiring it, or is established by proper evidence, they should presume it to be reasonable.''

Other cases which involve the question here considered, and which follow the principle stated in the Carter case, *supra.* are: *Arkadelphia Lumber Co.* v. *Arkadelphia,* 56 Ark. 370; *Brewster* v. *Pine Bluff,* 70 Ark. 28; *Carpenter* v. *Little Rock,* 101 Ark. 238; *Trigg* v. *Dixon,* 96 Ark. 199.  We can not say and it does not appear that the fee required in this case is unreasonable.

The second and third questions may be discussed together. It is settled that the authority of the city to enact an ordinance like the one under consideration must plainly appear in the statute and this authority will not be inferred from terms of doubtful or uncertain import. The authority for this ordinance is claimed to be conferred under the provisions of section 5454 of Kirby's Digest, which reads as follows:

"5454. They (city councils) shall have the power to license, regulate or prohibit all theatrical exhibitions and public shows, and all exhibitions of whatever name or nature. *Provided,* lectures on science, historical or literary subjects shall not be included within the provisions of this section; to regulate or prohibit the sale of all horses, or other domestic animals at auction in the streets, alleys or highways; to regulate all carts, wagons, drays, hackney coaches, omnibuses, and ferries, and every description of carriages which may be kept for hire, and all livery stables; to regulate hotels and other houses for public entertainment, and to regulate or to prohibit ale and porter shops or houses, and public places of habitual resort for tippling and intemperance, and to declare what are such."

That part of the section which will be considered here, says simply, "to regulate hotels, and other houses for public entertainment." It is seen that this section is attempting to define those things which a city council shall have power to license, regulate, or prohibit, and in the very nature of things, only general terms are employed. Appellant undertook, under the authority of this section, to regulate restaurants in the ordinance quoted. Was the authority conferred?

It is contended that the city did not undertake to regulate hotels, as it had the right to do, but that it without authority, undertook to regulate restaurants. This is not a revenue measure, it would be invalid if it were such, and the presumption, therefore, is that the city council became acquainted with the conditions of that city and determined that regulation of restaurants was

necessary, even though that of hotels was not, although, of course the ordinance would apply to any restaurant operated in connection with a hotel, and the ordinance is valid, if the authority for its enactment was conferred by the section quoted. A town or city council can exercise only such powers as are granted, but it is not required to exercise all of those which are granted. Webster's New International Dictionary defines a restaurant as "an establishment where refreshments or meals may be procured by the public; a public eating house," and according to the same authority, a hotel is "a house for entertaining strangers or travellers." An "entertainment" is defined as "hospitable provision for the wants of a guest, especially, a provision for the table; a hospitable repast, a feast; a formal or elegant meal" and the words feast, banquet and repast are given as synonymous of "entertainment."

The purpose of all statutory construction is to ascertain the legislative intent, and that intent must be given effect when ascertained. After naming various subjects of municipal control, section 5454 closes with a grant of power, which relates to the subjects of sleeping, eating and drinking. These are all necessarily public places and are run as such, and were deemed by the legislature as proper subjects of regulation. This section, 5454, was prepared for the cities and incorporated towns of the State and the phrase, "and other houses for public entertainment," would practically be meaningless, if it did not refer to those places where meals were served to the public. It is a general principle of construction that where general words follow particular ones, the general words must be construed as applicable to persons or things of the same kind or species. But in volume 6 of Words and Phrases, page 5071, the word "other" is defined. It was there said, "The rule of *ejusdem generis* is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent. When it can be seen that the particular word, by which the general word is followed was inserted, not to give a color-

ing to the general word, but for a distinct object, then to carry out the purpose of the statute, the general word ought to govern. It is a mistake to allow the rule to pervert the construction." *State* v. *Broderick,* 7. Mo. App. 19. And under the same title, it was also said that the word "other" implies something additional. *Mitchell* v. *American Cent. Ins. Co.,* 44 N. Y. Supp. 832. And as a further definition of the word "other," the following quotation from the case of *Hyatt* v. *Allen,* 54 Cal. 353, is given: "other" as used in the Constitution, article 6, section 4, providing that the Supreme Court shall have power to issue writs of mandamus, *certiorari,* prohibition, and *habeas corpus,* and all other writs necessary or proper to the complete exercise of its appellate jurisdiction, is equivalent to "different from those which have been specified." "Other" does not mean the same as the word "also." Webster's definition of "other" is "different from that which has been specified"; Worcester's, "not the same; not this or these; different."

Of the visitors to these cities and towns, some are there long enough to become guests of a hotel, others need only the accommodations of eating houses, but there might exist a necessity for the regulation of these eating houses which did not exist with regard to hotels. But of this the town council must judge. Under the facts here recited, a very extensive menu was not provided, but it was a public eating house and, therefore, a house for public entertainment within the meaning of the section above quoted. It would appear that there was as great necessity for the regulation of a place where meats were barbecued and served at any and all hours, as there would be for any other place of entertainment of that kind.

Moreover, it has been held in the case of *Bunn* v. *Johnson,* 77 Mo. App. 596, that:

"An inn or hotel is a place where the proprietor makes it his business to furnish food or lodging, or both to travellers. To establish the relation of landlord and guest, the traveller must visit the hotel for the purpose

of availing himself of the entertainment offered, that is, to obtain refreshments or lodging."

But whether that definition is too broad, need not be determined here, for we are of opinion that the legislature intended to and did, by the section quoted, confer the right to regulate restaurants and that appellee's place is a restaurant.

Accordingly the judgment of the court is reversed and the cause remanded.