ROBERT N. DONAHUE *v.* DAVID S. CONANT ET AL.

February Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, and MOULTON, JJ.

Opinion filed May 8, 1929.

*Shields & Conant* for the defendants.

*Hugh W. Hastings* and *Stanley C. Wilson* for the plaintiff.

MOULTON, J. Charles F. Bracy and his wife owned certain land at the southerly end of Lake Morey, in Fairlee, on which was conducted a hotel and general eating house. On September 14, 1904, they conveyed to Abbie M. Densmore a certain part

thereof, known hereafter as the "Tumble-Inn Property." The deed contained this provision:

"These premises are conveyed subject to the condition that no restaurant * * * * shall be built upon the premises for public use."

On May 25, 1906, the Bracy's conveyed to Guy F. Densmore another lot, adjoining the one above mentioned, hereafter known as the "Casino Property." The deed provided that:

"And it is also understood and agreed and it is a part of the consideration of this deed and a condition thereof, that the said Densmore nor his successors nor any other person shall not build or maintain a restaurant nor a confectioner's stand, nor maintain a soda fountain or sell bottle sodas or soft drinks upon the premises herein conveyed, nor do anything which shall conflict with this business at the lake."

The Densmores conveyed both lots to the defendant Meehan on May 21, 1914, "subject to all such privileges and reservations as are mentioned" in the two preceeding deeds, to which reference was specifically made. Meehan and his wife quitclaimed the property to defendant Conant on April 11, 1921.

Bracy died, and all of his property at Lake Morey was decreed to his widow, who, on April 17, 1919, deeded it to the plaintiff. The deed, after describing the property, contained this language:

"Meaning hereby to convey all the land I now own on the shores or about Lake Morey together with all privileges, rights and reservations that have been heretofore reserved by Charles F. Bracy as shown by former deeds or the records thereof."

During his ownership of the property, except during the first year of it, Densmore paid $100 a year to Bracy for the privilege of operating a restaurant and selling soft drinks and the like on the Casino property. After Meehan purchased in 1914, he paid the same sum for counter rights and the privilege of selling soft drinks, tobacco, frankfurter sausages (called "hot dogs" in the record) and ice cream, to Bracy while the latter lived, after his death to Mrs. Bracy while she owned the prop-

erty of her late husband, and thereafter to the plaintiff, until the close of the season of 1920. Since then nothing has been paid. Early in 1921, after Conant had acquired title, a small building containing a counter and cooking apparatus was moved upon the Tumble-Inn property and was used and controlled by Meehan, although under what arrangement does not appear. In 1921 and 1922 ice cream, soft drinks, cigars, and frankfurter sausages were sold in this building. The latter were cooked and sold there "on more than one occasion." The building was leased in 1922 by Meehan to a Mrs. Munn, who caused to be erected below high-water mark in the lake, and nearly if not wholly, below low-water mark, opposite the Tumble-Inn property, a small building connected with the shore by a runway. This building was used, in 1922, for the cooking, and preparation for sale of frankfurter sausages. A similar building, over the lake, opposite the Casino property was built in 1924 by Meehan, and used by him for the sale of ice cream, soft drinks, cigars, cigarettes, and frankfurter sausages, but has since been removed. During the season of 1923 Meehan leased the building on the Tumble-Inn property to a person by the name of Coburn, but only soft drinks, cigars, and cigarettes were sold there during that year. In 1924 ice cream was sold there and also on the Casino property.

All these sales were with the intent and purpose of avoiding payment to the plaintiff, for engaging in the enterprise which he claims to control.

The question is, whether the acts above enumerated constituted a violation of the provisions of the deeds from Bracy and his wife to the Densmores. The chancellor, who heard this case below, held that they did, and after making a finding of the facts, the material part of which has been recited, issued an injunction against the defendants, and decreed the payment of damages and costs. The defendants have appealed to this Court.

The defendant Charles H. Munn is not mentioned in the finding of facts. A Mrs. Munn, but whether his agent or not does not appear, comes briefly into the picture in connection with the Tumble-Inn property in 1922, and then disappears. On the record, defendant Munn has no connection with anything that has transpired. For this, if for no other reason, the decree against him was erroneous.

 We may consider first the two small buildings erected over the lake. It is, of course, incumbent upon the plaintiff to show that such acts as he claims were in violation of the restrictions in the deeds, took place upon the premises covered by them. The chancellor has found, as we have seen, that these buildings stand below high-water mark, and nearly, if not quite, below low-water mark. The boundaries of both lots on the water side, are "along the lake shore." The waters of Lake Morey are public waters, and grants of lands bounding upon the lake pass title only to the waters' edge, or to low-water mark if there is a definite low-water line. *Hazen* v. *Perkins,* 92 Vt. 414, 418, 419, 105 Atl. 249, 23 A. L. R. 748.

█ Therefore it does not affirmatively appear that these buildings were within the limits of the property conveyed by the two deeds from Bracy and his wife; and whatever may have been done in them constitutes no basis for an injunction.

█ As we have seen, the restriction upon the Tumble-Inn property is that no restaurant shall be built thereon for public use. The findings are that in 1921 and 1922 frankfurter sausages, ice cream, soft drinks, and cigars were sold in a small building thereon. In 1923, soft drinks, cigars, and cigarettes, only; and in 1924, ice cream only. We may eliminate from consideration the sales of soft drinks, cigars, cigarettes, and ice cream, during these years. Such transactions, taken by themselves, do not make the place a restaurant. *Cecil* v. *Green,* 60 Ill. App. 61, 63; *State* v. *Hogan,* 30 N. H. 268, 273; *In re* Henery, 124 Iowa, 358, 100 N. W. 43, 44.

█ A "restaurant" is a place where meals and refreshments are served. *Standard Brewing Co.* v. *Weil,* 129 Md. 487, 99 Atl. 661, 663, L. R. A. 1917C, 929, Ann. Cas. 1918D, 1143; *Cromwell* v. *Stephens,* 3 Abb. Pr. (N. S.), (N. Y.) 26, 35. It is an eating house—a place where something to eat, already prepared, or which can be readily prepared, may be obtained. *State* v. *Hogan, supra,* page 272 of 30 N. H. The term is defined in Webster's New International Dictionary as "an establishment where refreshments or meals may be obtained by the public; a public eating house." Applications of the term to various situations may be found in *Comm.* v. *London,* 149 Ky. 372, 149 S. W. 852; *Ex parte Lemon,* 143 Cal. 558, 77 Pac. 455, 456, 65 L. R. A. 946; *City of Ft. Smith* v. *Gunter,* 106 Ark. 371, 154 S. W. 181, 183; *State* v. *Shoaf,* 179 N. C. 744, 102 S. E. 705,

9 A. L. R. 426, note page 428; *Richards* v. *Ins. Co.*, 60 Mich. 420, 27 N. W. 586, 588.

█ █ But we think that in order to constitute a violation of the provision in the deed something more than occasional instances of the sale of edibles must be shown; that is, that it must appear that the business of operating a restaurant was carried on. In *Parkhurst* v. *Brock,* 72 Vt. 355, 356, 47 Atl. 1068, it is said that the word ''business'' does not denote an isolated act or two for the special convenience and interest of the one doing them, but an aggregation of acts that may fairly constitute the carrying on of the business. In *State* v. *Scampini,* 77 Vt. 92, 117, 59 Atl. 201, it is said that the word implies an employment or occupation that is continuous. Assuming, but not deciding, that the sale of frankfurter sausages, taken by itself, or in connection with the sale of soft drinks and ice cream, would, if persisted in, constitute the place in which it was done a restaurant, it is enough to say that this is not the situation presented by the record. All that the chancellor has found is that, during the years 1921 and 1922, such articles were sold ''on more than one occasion.'' This falls far short of showing such a course of business as to come within the restriction in the deed.

█ With regard to the Casino property, the case is still weaker. All that there appears is the sale of ice cream during the season of 1924. The frequency or amount of the sales is not stated. This is not the maintenance of a restaurant or confectioner's stand or soda fountain, or sale of bottled soda, or anything which we can say would conflict with such business elsewhere on the lake.

In view of what we have said it is not necessary to decide whether the restrictive provisions in the deeds are in the nature of covenants running with the land, as the plaintiff claims, or purely personal covenants, as the defendants insist. In either view, we hold that no violation of them appears upon the record.

*Decree reversed, and cause remanded with directions that a decree be entered for the defendants to recover their costs.*