252 S.W.2d 653 (1952)
FREESE et al.
v.
ST. PAUL MERCURY INDEMNITY CO.
No. 28490.
St. Louis Court of Appeals, Missouri.
November 18, 1952.
Rehearing Denied December 12, 1952.
*654 Forrest Boecker, Clayton, for appellants.
Norman Bierman, Speros B. Boudoures and Anderson, Gilbert, Wolfort, Allen & Bierman, all of St. Louis, for respondent.
HOLMAN, Special Judge.
Plaintiffs (appellants) filed this suit seeking to recover the amount expended in the defense of a damage suit. They contend that defendant (respondent) was obligated to make the defense under the terms of a policy of liability insurance issued by it. A jury was waived and the cause was tried by the court. Judgment was for the defendant and plaintiffs have duly appealed.
No evidence was offered at the trial, the facts having been stipulated. It appears from the stipulation that plaintiffs were partners in the operation of an automobile filling station in Kirkwood, Missouri. On or about November 15, 1947, they obtained from defendant an insurance contract designated as a "combination service station policy," which was in full force and effect on November 2, 1948. The policy contained the usual agreement on the part of the insurer to pay such claims and damages as plaintiffs might become legally obligated to pay and further to defend any suit for damages filed against plaintiffs as a result of their ownership, occupation or use of said service station premises. However, Paragraph G of said policy contains 12 numbered sub-paragraphs excluding liability of the defendant if the casualty resulted from certain specified operations or causes, including the following: "(12) resulting from the operation of an automobile parking lot, storage garage, repair shop, automobile sales agency, restaurant, lunch room, or any other business operation not incidental and usual to an automobile filling station."
On November 2, 1948, the plaintiffs permitted the use of a portion of said service station as a "polling place," where the voters of a certain precinct could come and cast their ballots. It does not appear whether plaintiffs had ever permitted such use of their premises at any other time or that they were compensated for the use on this occasion. On the date in question one F. M. Brubaker entered the premises of the plaintiffs for the purpose of voting and while there fell and was injured. The plaintiff's duly notified defendant of this incident, as prescribed by the contract of insurance.
After investigating the claim defendant on March 9, 1950, wrote plaintiffs that the injury to Mr. Brubaker resulted from the operation of a polling place and was not within the policy coverage and the defendant disclaimed any responsibility in relation to the matter. Thereafter, said F. M. Brubaker filed a suit for damages against plaintiffs in the Circuit `Court of St. Louis County, Missouri. Plaintiffs retained an attorney, who forwarded the petition and summons to defendant and called upon it to defend the suit. Defendant continued to deny liability and disclaim coverage. The said cause was tried and resulted in a verdict for defendants (plaintiffs herein).
The attorney employed by plaintiffs charged them $500 for his services in defending said case and it is agreed that this charge was reasonable. Plaintiffs have paid this amount and were also required to expend the further sum of $24 in connection with the defense of that case. They demanded that defendant reimburse them for these expenditures, but defendant has refused to do' so.
The facts having been agreed to, this cause involves only the determination of a question of law. It is conceded that under the contract defendant was required to defend the Brubaker case unless relieved by the terms of the exclusion clause heretofore set out. The use of a portion of the premises as a voting place was not one of the operations specifically listed in the said provision. It necessarily follows that the sole issue upon this appeal is a determination as to whether risks incident to the use *655 of the premises as a polling place were excluded from coverage by the general clause, "or any other business operation not incidental and usual to an automobile filling station."
Plaintiffs contend, (1) that the use of the premises as a polling place does not constitute a "business operation;" (2) that in any event an isolated transaction does not constitute the "operation of a business;" (3) that any ambiguity in the policy must be resolved by adopting the interpretation most favorable to the insured, particularly relating to restrictive terms limiting liability; and (4) that the ejusdem generis rule should be applied in determining the meaning of this clause.
The defendant answers these contentions by asserting that the use of the premises as a polling place is clearly a "business operation" excluded from coverage and that the language in the policy is plain and its meaning is clear. It argues that there is no ambiguity therein and consequently there is nothing for the court to construe or interpret.
It is an elementary rule of insurance law that where no ambiguity exists in a policy there is nothing to construe and the court must simply apply its terms as written, giving to the words their plain and ordinary meaning. If, however, the language is ambiguous the court must construe it according to definite rules of interpretation which have come to be well settled. Markel v. Mutual Benefit Health & Accident Ass'n, Mo.App., 121 S.E.2d 176.
The uncertainty of meaning in the provision under consideration is indicated in one sense by the use therein of the word "business." This is said to be a broad, equivocal, flexible, comprehensive word, not susceptible to a general definition, but one which has been variously defined by lexicographers and courts. 12 C.J.S. p. 761. The provision in question being in some respects ambiguous it is proper that we utilize such rules of interpretation as may be of assistance to us in ascertaining its meaning.
We have concluded that neither the conduct of a polling place, or the act of plaintiffs in permitting a portion of their premises to be used as such, would constitute a "business operation" within the meaning of this policy. It appears rather obvious that the purpose of the exclusion clause was to limit the coverage to one general business. It was no doubt intended by defendant and so understood by plaintiffs that if they began the operation of one or more additional business enterprises in conjunction with the operation of the filling station such additional undertakings would not be covered by the policy.
It would seem unnecessary to cite any authority for the proposition that the act of voting by a citizen, as well as the function of election officials in conducting an election, is not a "business operation" as the words are used in this policy. Of course the conduct of an election may be referred to in a broad sense as a part of the business of government. "Business," however, as used in this policy should be defined as a commercial or industrial undertaking usually entered into for financial gain.
We have found one case which discusses the issue as to whether the conduct of an election is a business. In State ex rel. Sizemore v. State Election Board, 203 Okl. 1, 217 P.2d 805, 806, the petitioner contended that since the date of the primary election fell on July 4 that it should be held the following day under a statute providing that, "Any act authorized, required or permitted to be performed on a holiday may be performed on * * * the next succeeding business day and no liability or loss of rights * * * shall result from such delay." Admittedly the statute was enacted for the regulation of business. The question was, "Does the exercise of sufferage constitute business?" The Supreme Court of Oklahoma held that the statute referred to commercial, industrial or professional engagement and had no reference to the right or privilege of voting.
As we have previously indicated, we do not think the act of plaintiffs in permitting *656 the use of a part of their premises as a polling place was a "business operation." The word "business" when referring to the use of premises means "an occupation and use of premises, permanent and continuous in its character as distinguished from a single act or business transaction or an occasional day's use of the premises." 12 C.J.S. p. 770.
It is well established that the phrase "operation of a business" or "doing business" denotes a continuing enterprise and an occasional, incidental, isolated or sporadic transaction would not bring one within the meaning of such expressions. Pitts v. Maupin, 230 Mo.App. 221, 88 S.W.2d 384; Semple v. Schwarz, 130 Mo.App. 65, 109 S.W. 633; Parkhurst v. Brock, 72 Vt. 355, 47 A. 1068; Donahue v. Conant, 102 Vt. 108, 146 A. 417; Welch Holding Co. v. Galloway, 161 Or. 515, 89 P.2d 559; Lloyd Thomas Co. v. Grosvenor, 144 Tenn. 347, 233 S.W. 669; Stone v. M. L. Virden Lumber Co., 205 Miss. 841 39 So.2d 498; Schultz v. Long I. Machinery & Equipment Co., La.App., 173 So. 569.
The use of the premises as a polling place is somewhat analogous to the situation where a business man will permit a church or school organization to hold a rummage sale or perhaps the sale of food or needlework on a part of his premises. In so doing he not only promotes good will, but is likely to sell some of his merchandise to persons attracted to his premises by these projects. Would anyone contend that by occasionally consenting to such use of his premises the merchant is engaging in a business operation not incidental to his regular business? We think not.
What we have heretofore said will indicate our view that the clause G (12) of the policy did not exclude liability for the defense of claims arising under the circumstances detailed herein and hence the judgment should have been for plaintiffs. The rules of construction advocated by plaintiffs tend to strengthen and fortify our conclusion. We recognize that restrictive provisions limiting the insurer's liability should be construed most strongly against the insurance company. State ex rel. Mills Lbr. Co., v. Trimble, 327 Mo. 899, 39 S.W.2d 355; American Paper Products Co. v. Continental Insurance Co., 208 Mo.App. 87, 225 S.W. 1029. Furthermore, any ambiguity in an insurance contract should be resolved by adopting the interpretation most favorable to the insured and which will afford the widest scope of protection. Caine v. Physicians Indemnity Co., Mo.App., 45 S.W.2d 904.
The conclusion we have reached makes it unnecessary to extend this opinion with a discussion of the applicability of the ejusdem generis rule in construing the exclusion clause.
The cause is reversed and remanded with directions to the trial court to set aside the judgment for defendant and to enter a judgment for plaintiffs in the sum of $524.
BENNICK, P. J., and ANDERSON, J., concur.