Hawk Resorts Int'l, L.P. v. Colburn, No. 90-2-10 Wrcv (Hayes, J., Mar. 23, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor County | Docket No. 90-2-10 Wrcv |

Hawk Resorts International, L.P.
  Plaintiff

v.

L. Rodney Colburn,
Yolande K. Miracle-Colburn,
and Hawk Services Company, Inc.
  Defendant

Decision on Cross-Motions for Partial Summary Judgment

Plaintiff Hawk Resorts International manages a resort in Plymouth, Vermont. In 2004, it sold an interval ownership in one of its resort lodges to defendants Rodney Colburn and Yolande Miracle-Colburn. Although plaintiff does not normally finance the sale of its property interests, it offered to do so on this one occasion because defendants were having trouble obtaining outside financing. In response to this foreclosure action, defendants filed a counterclaim against the plaintiff, alleging that the note is void because plaintiff loaned money without first obtaining a license from the Department of Banking, Insurance, Securities, and Health Care Administration. the parties have filed cross motions for summary judgment as to this counterclaim.

The relevant law at the time of the transaction was that "[n]o person shall . . . engage in the business of making loans of money" without first obtaining a license from the commissioner of BISHCA. 8 V.S.A. § 2201(a)(1) (2004). This licensing

rule is meant to ensure that the "business of organizations that offer financial services and products shall be supervised in such a way as to protect consumers against unfair and unconscionable practices." *In re Gorman*, 274 B.R. 351, 357 (D. Vt. 2002) (quoting 8 V.S.A. § 1). Among the various penalties that may be imposed for knowing and willful violations of the licensing requirement is a civil remedy voiding the loan in its entirety. 8 V.S.A. § 2215(c)(1) (2004). Defendants seek that remedy in their counterclaim.

Both parties agree that the issue turns on whether plaintiff was "engaged in the business of making loans of money" so as to come within the licensing requirement. Defendants argue that plaintiff engaged in the business of lending money by offering the loan in this case. Defendants argue that it is immaterial whether plaintiff offered loans on other occasions; the fact of this one loan is enough. Plaintiff contends that a single isolated transaction does not amount to "engaging in the business of making loans of money." Plaintiff relies heavily upon the undisputed facts that it has never loaned money to another purchaser nor advertised the availability of financing in any of its promotional materials. In other words, plaintiff argues that it is in the business of developing and managing resorts, rather than in the business of lending money.

Before turning to the separate cross-motions for summary judgment, it is important to clarify the law to be applied. An analysis of the issue begins with the long history of professional licensing requirements in this country, many of which require licenses of those "engaged in the business" of the professional occupation at issue. A general rule has emerged over time that "single or isolated transactions" do not constitute "engaging in business," chiefly because it is viewed as unreasonable to

2

regulate the activities of individuals who perform an act related to a licensed activity, but who do not intend to involve themselves in the regulated activity with any frequency or permanency. See Annotation, *Single or Isolated Transactions as Falling Within Provisions of Commercial or Occupational Licensing Requirements*, 93 A.L.R.2d 90, at § 2 (1964) (collecting cases); see also *Ambrosino v. Pub. Util. Hearing Bd.*, 174 A.2d 285, 286 (R.I. 1961) (holding that an automobile mechanic did not need a towing license where he towed a car on one isolated occasion but did not own a tow truck or otherwise tow cars in his line of work). In other words, the term "engage in business" means "at least that the business shall be carried on as a regular occupation or constant employment as distinguished from a single isolated act." See *Commonwealth v. White*, 157 N.E. 597, 597–98 (Mass. 1927) (holding that Boston taxi driver who took one fare in Brookline under unusual circumstances did not "engage in the business" of operating a taxi in Brookline in violation of licensing requirement).

Vermont shares this understanding. In *Johnson v. Cass & Emerson*, 91 Vt. 103, 106–07 (1917), the Vermont Supreme Court considered whether an employment agent was "doing business" under a name other than his own in violation of the trade name registration laws. The evidence involved a single advertisement in the *St. Johnsbury Republican*; the Court held that this isolated advertisement did not constitute "doing business" in violation of the trade name law, because "[t]he word business implies an employment or occupation that is continuing. A single or isolated act . . . is not 'doing business.'" *Id.*; see also *Donahue v. Conant*, 102 Vt. 108, 113 (1929) (selling frankfurter sausages and soft drinks on a few occasions did not constitute "the business of

3

operating a restaurant"); *Sanborn v. Weir*, 95 Vt. 1, 8 (1921) (explaining that for purposes of obtaining veterinary license, "doing business . . . does not denote a few isolated acts, but implies an occupation that is continuing").

A number of other courts have applied this same principle to lender-licensing laws. In *Currier v. Tuck*, 287 A.2d 625, 627 (N.H. 1972), for example, the New Hampshire Supreme Court explained that "an occasional isolated act of loaning money as an accommodation to a customer or friend is not engaging in the business of making loans," even though the Court there held that the somewhat outrageous facts of the case supported a finding that the defendants were in fact engaged in the business of making loans. See *id*. at 627 (explaining that the defendants had taken advantage of an elderly woman by promising to install new asbestos siding on her home in exchange for a mortgage deed to the house). Likewise, in *Hammond v. Reeves*, 552 P.2d 1237, 1238– 39 (N.M. Ct. App. 1976), the New Mexico Court of Appeals cited the same principle in support of its holding that a lender who made "approximately five small loans" over a period of time was not "engaged in the business of lending" so as to require a license from the state. And, most recently, the New Hampshire Superior Court held that evidence of a single loan transaction did not support a finding that the lender was "engaged in the business" of making loans. *Frost v. New Hampshire Dep't of Banking*, No. 217-2010 CV 288, at 5–6 (N.H. Super. Ct. June 29, 2010).

Against this backdrop, it seems significant that our legislature chose to require licensing of those lenders who "engage in the business of making loans of money." 8 V.S.A. § 2201(a)(1). By choosing this history-laden language, and by declining to define

4

the term further,[1] the legislature indicated its intent that the licensing requirement apply only to those persons who engage in the ongoing occupation of money-lending, and not to "single or isolated" loans. *Johnson*, 91 Vt. at 106–07; see also Black's Law Dictionary (9th ed. 2009) (defining "business" as "a commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain").

The federal district court judges who have discussed Vermont's licensed-lender law seem to share the same understanding. In *In re Hearn*, 174 B.R. 679, 685 (Bankr. D. Vt. 1994), for example, Judge Conrad noted that the facts of the case were unclear as to whether the lender was "engaged in the business of making loans of money," and suggested that the licensing requirement would not apply "if this was merely a casual transaction." And in *In re Gorman*, 274 B.R. 351, 357–58 (D. Vt. 2002), by contrast, Judge Sessions found it obvious that the licensing statute would apply to a venture capitalist whose "line of work . . . involved providing funding to ventures" such as the debtor's fly-fishing business.[2] Although not directly stated in such terms, both cases

---

[1] State legislatures are always free to impose more stringent regulation requirements. New Jersey, for example, enacted a statute that required licenses of those "engaged in the secondary mortgage loan business," and an additional statute defining that term as including a person who "offers to make or makes a secondary mortgage loan in this state." New Jersey Stat. Ann. § 17:11A-36(a) (since repealed). In *Gottesfeld v. Kaminski*, 524 A.2d 872, 874–75 (N.J. Super. Ct. App. Div. 1987), therefore, the court held that an isolated secondary mortgage loan *did* fall within the licensing requirement, because the legislature had made clear that "the making of a single secondary mortgage loan can now constitute engaging in the secondary mortgage loan business." The Vermont Licensed Lender Law does not contain any such additional definition; its language invokes the broader principles discussed *supra* rather than the more stringent approach taken by New Jersey.

[2] *Gorman* does not identify the minimum amount of activity that would constitute "doing business" as a lender. An extended comparison between the facts of this case and the facts of *Gorman*, therefore, would not prove whether plaintiff here is "engaged in the business of making loans of money" for purposes of § 2201(a)(1).

express awareness that a lender must be engaged in something more than isolated transactions in order to be found to be "engaged in the business of making loans of money."[3]

As the court understands it, then, the guiding principle here is this: for purposes of § 2201(a)(1), a person does not "engage in the business of making loans of money" merely by making an isolated loan or two for the sake of convenience or accommodation to a friend or customer. Rather, a person "engages in the business of making loans of money" by entering into a series of acts that may fairly lead one to the conclusion that the person is involved in an ongoing occupation of money-lending. *Donahue*, 102 Vt. at 113; *Johnson*, 91 Vt. at 106–07; *Parkhurst v. Brock*, 72 Vt. 355, 356 (1900). It is a question to be determined from all the circumstances, and there may be times when the surrounding circumstances support a finding of a business even when there is only one transaction in evidence. See *Currier*, 287 A.2d at 627 (although there was only one asbestos-siding mortgage loan in evidence, defendants were guarded in their testimony, and did not deny existence of other similar loans).

---

[3] Defendants argue that this principle was either overruled, set aside, or not recognized by the Vermont Supreme Court in *Klein v. Wolf Run Resort, Inc.*, 163 Vt. 506 (1995). The issue was apparently present in some form in that case because the lender argued that he was not engaged in the business of lending money, but the Supreme Court did not address the issue or the relevant facts in its opinion. Defendants argue that "it can easily be inferred from the text that Mr. Klein's transaction with Wolf Run Resort . . . was his only transaction coming within the purview of Vermont's licensed lender law," and thus the single-transaction rule must not apply in Vermont because if it did, "[i]t would have been a matter of utter simplicity and efficiency to dispose of the case on the ground that the licensed lender law did not apply to Mr. Klein." The text of the opinion, however, does not actually provide any facts about Mr. Klein's business dealings; defendants simply assume that missing facts would favor them. Nor does the opinion discuss the substantive issue at all; defendants simply speculate as to why the Supreme Court decided not to address the issue. This court will not ascribe a holding to *Klein* (casting into doubt a longstanding principle) based on assumed facts and assumed reasoning. If the *Klein* court had wanted that case to stand for the principles claimed by defendant, it would have said so.

The court now turns to the separate motions for summary judgment. Cross-motions for summary judgment require the court to evaluate each motion "on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720. Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3); *Price v. Leland*, 149 Vt. 518, 521 (1988).

Defendants moved for summary judgment on the sole ground that "at the time plaintiff made the referenced extension of credit, plaintiff was not licensed as a lender under Vermont law." As explained above, this fact, even though undisputed, is not sufficient to support the entry of judgment because it does not explain whether plaintiff was "engaged in the business" of lending money at the time of the loan[4]. As a result, defendants' motion for summary judgment on their counterclaim is denied.

Plaintiff moved for summary judgment on the ground that the undisputed facts establish that it was not "engaged in the business of making loans of money" at the time the loan was made. The proffered material facts supporting this argument are that, although plaintiff offered financing on this one occasion: (1) plaintiff has never financed any other transactions; (2) plaintiff has never advertised that it offers financing of any kind to potential buyers of real estate; and (3) plaintiff is not in the business of financing

---

[4] It is unnecessary for the court to reach the question whether the sanction of voiding the entire transaction would be appropriate under 8 V.S.A. §2215(c)(1), if the plaintiff was "engaged in the business" of lending money.

7

and selling mortgages, but rather in the business of constructing homes and developing, managing, and selling real estate. Defendants dispute the "materiality" of these statements as well as the legal characterization of whether plaintiff is "in the business of financing and selling mortgages," but otherwise do not dispute the facts that plaintiff has never financed any other transactions or advertised the availability of such financing. Nor have defendants come forward, in response to the properly-supported Rule 56 motion, with other evidence tending to show that plaintiff was "engaged in the business of making loans of money." Defendants' position is firmly that this one transaction was sufficient.

The record therefore establishes that plaintiff financed this one transaction, but has never financed any other transactions nor advertised that it offers financing of any kind to potential buyers of real estate. And although the aforementioned cases do hold out the possibility that the circumstances might support a finding of a business even when there is only one transaction, e.g., *Currier*, 287 A.2d at 627, here there is no other evidence in the record that would support an inference that plaintiff was engaged in a continuing money-lending occupation. All that is shown by the record is this one "single, isolated transaction." For all of the foregoing reasons, this is not sufficient to establish that plaintiff was "engaged in the business of making loans of money" at the time it financed the sale of the interval ownership to defendants.

Plaintiff's motion for partial summary judgment as to the defendants' counterclaim is granted.

**ORDER**

(1) Defendants' Motion for Partial Summary Judgment (MPR #1) as to their counterclaim, filed Sep. 20, 2010, is ***denied***; and

(2) Plaintiff's Cross-Motion for Partial Summary Judgment (MPR #2) as to the defendants' counterclaim, filed Oct. 18, 2010, is ***granted***.

Dated at Woodstock, Vermont this _____ day of March, 2011.


_____
Katherine A. Hayes
Superior Court Judge