## J. HEFFRON ET AL. v. KITTANNING INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 27, 1890—Affirmed at Bar.

(a) A policy of insurance against loss by fire of a building " occupied by assured as a dwelling house," provided that the company should not be liable, " if the risk shall be increased from any cause whatever within the knowledge of the assured, during the continuance of the insurance," without notice, etc.

(b) Nor should the company be liable "for loss in case of fire happening by any insurrection, invasion, foreign enemy, civil commotion, mob, riot, or any military or usurped power; nor explosions of any kind whatever within the premises, nor by concussions merely : "

1. In such case, the words, " occupied by the assured as a dwelling house," were words of description, and not warranty; the policy was not avoided by a lease of a part of the dwelling; and a loss of the property insured by a fire resulting from the explosion of a lamp was a loss for which the company was responsible.

2. A provision of the policy that " payment of losses shall be made ninety days after complete proofs and adjustment thereof, at the office of the company," did not require that, after due notice and proofs of loss had been furnished, demand for payment at the company's office should be made before suit.

Before Paxson, C. J., Sterrett, Green, Clark and Mc-Collum, JJ.

No. 287 January Term 1890, Sup. Ct.; court below, No. 199 November Term 1885, C. P.

On November 5, 1885, John Heffron and Mary A., his wife, in the right of said wife, to the use of Benjamin H. Throop, to whom the said wife's interest had been assigned, brought debt against the Kittanning Insurance Company, on a policy of insurance issued to Mary Ann Heffron, "against loss or damage by fire or lightning to the amount of five hundred dollars. Three hundred dollars on her two story and basement frame dwelling, eighteen by twenty-four feet, occupied by assured as a dwelling house and situate, . . . . ; twenty-five dollars on her household furniture; twenty-five dollars on her family provisions; twenty-five dollars on her wearing apparel; fifty dollars on her sewing machine; thirty dollars on her beds and bedding, and forty-five dollars on her carpets and stoves, while contained therein."

The policy, dated October 17, 1883, provided, inter alia, as follows:

"1. If the assured shall cause the building, goods, or other property, to be described in this policy otherwise than they really are, or make any false representations as to the character of the hazard, this policy shall be void; or, if the risk shall be increased from any cause whatever within the knowledge of the assured, during the continuance of the insurance, notice thereof shall be given to the company and consent to such increased hazard be indorsed hereon, or this policy shall be of no force, and if the property, or any part thereof, is situated at the time of the fire elsewhere than as described in this policy, the company shall not be liable therefor."

"8. This company shall not be liable for loss in case of fire happening by any insurrection, invasion, foreign enemy, civil commotion, mob, riot or any military or usurped power; nor explosions of any kind whatever within the premises, nor by concussions merely."

"23. Payment of loss shall be made ninety days after complete proof and adjustment thereof, at the office of the company in Kittanning, Pennsylvania."

At the time of the issuance of the policy to Mrs. Heffron she had leased a portion of the building to six Italians, who continued to occupy it until July 6, 1885, when the building and contents were destroyed by a fire originating from the explosion of an oil lamp.

No claim for payment of the loss was presented at the office of the company in Kittanning, and when suit was brought, the company refused payment for the reasons following:

1. There was a breach of warranty by the assured, with relation to the occupancy of the building.

2. There was an increase of risk during the continuance of the insurance, without the consent of the company.

3. The proximate cause of the loss was an explosion for which the company was not liable.

4. The action was brought prematurely, in that no demand was made or claim presented at the office of the company.

The cause having been put at issue, it was referred by agreement of the parties, on April 15, 1887, to *Mr. S. B. Price*, as referee, under the provisions of the act of 1869 [perhaps, act of April 6, 1869, P. L. 725] and its supplements; and on January 17, 1888, the referee filed a report directing judgment to be entered for the plaintiff in the sum of $545.17.

The defendant filed exceptions to said report and after argument thereof, the court, ARCHBALD, P. J., on August 30, 1888, filed an opinion, which in part was as follows:

The first and second exceptions are not sufficiently specific, being merely directed against the general result reached by the referee, and need not therefore be regarded. The third exception also needs no special notice. The fourth and ninth exceptions are best considered together.

It seems to me that the referee might well have found as a fact that the fire by which the property insured was destroyed happened by the explosion of a kerosene lamp within the premises. Mrs. Heffron, the plaintiff, in her proofs of loss, gives this as the origin of the fire, and upon being called as a witness she testifies: "I left the lamp up-stairs with the children. I heard a noise like a report. I paid no attention, thinking it was firing outside. Then I saw a light. Went up-stairs and found the bed on fire. I ran out and screamed, and then went

Opinion of Court below.

back for the children. Could scarcely get them out, the fire was advanced so. The fire was in the second story." Again, upon being recalled, she further says : " The fire was in the evening, about ten or quarter after. It occurred by reason of an explosion of a lamp." This is the whole evidence in the case, and from her own mouth we thus have it, that the fire occurred from the explosion of a kerosene lamp which she had left up-stairs in the second story. It is true, Mrs. Heffron did not see it explode, and when she heard the explosion attributed it to another source. But she was up-stairs almost immediately afterwards, and saw the fire in progress, and we have her unqualified statement that such was the origin of it. This is her conclusion from all the facts, some of which no doubt she has not considered it of importance to give. It can hardly be said that this, for the purposes of this suit, leaves the cause conjectural. Taking the statement of Mrs. Heffron, who is the legal plaintiff, in the light of an acknowledgment or admission, it dispenses with the need of further proof.

But the court cannot modify the findings of fact reported by a referee. They stand like the special verdict of a jury. The only way to correct a manifest mistake of such character as this, is to re-commit the case for a new trial : Thornton v. Enterprise Ins. Co., 71 Pa. 239. To warrant this, however, the mistake must be one which materially affects a recovery in the case, and in the construction which I give to the eighth clause of the policy, as will be seen further on, the question whether the fire originated from an explosion or not, is immaterial. Even though the referee, therefore, may have erred in this regard, the exceptions under consideration do not call for the setting aside of his report.

The fifth exception will be taken up in connection with the eleventh, twelfth and thirteenth.

The sixth and seventh exceptions go together. They do not require extended consideration.

If the defendant company had proved that they had been ready and willing to pay the plaintiff's loss, upon due demand at their office in Kittanning, and that no such demand had been made, this, possibly, might constitute a good defence, under the twenty-third clause of the policy. But even to this it might be answered that the summons, which was served at the

home office, was a demand.   The company, however, deny any liability to the assured, and this action is to determine that issue.   There certainly is nothing in the policy which makes a demand for payment at Kittanning a condition precedent to bringing suit for that purpose.

The eighth exception raises the most important question in the case, and one which is involved in some difficulty.   Assuming that the evidence shows, and that the referee should have so found, that the fire occurred from the explosion of a lamp, is this within the exceptions made in the eighth clause of the policy?   This clause is a limitation upon the general liability and undertaking of the company, and its terms are to be construed most favorably to the assured.   If there is any lack of clearness, the court certainly will not strain at a construction which will relieve the company, but a doubt, if any, will be resolved in favor of the assured: Teutonia F. Ins. Co. v. Mund, 102 Pa. 89; Allemania F. Ins. Co. v. Pittsburgh Exposition Soc., 10 Cent. R. 292.   The clause in question reads as follows:

" This company shall not be liable for loss in case of fire happening by any insurrection, invasion, foreign enemy, civil commotion, mob, riot, or any military or usurped power; nor explosions of any kind whatever within the premises, nor by concussions merely ; nor when the fire is caused by the fall of a building or any part thereof (except such falling be the result of a fire) ; nor, when fire heat is used in any process, to the articles damaged by such process; nor for any damage by heat within the premises without combustion ; nor if the assured shall keep or use, or permit to be kept or used on the premises, gun-powder, fire-works, nitro-glycerine, dynamite . . . . . or volatile oils, without written consent in this policy . . . . ."

The whole clause, as will be seen, is divided into different sections, each covering excepted risks of different character. They are all sufficiently defined except the second, which is made ambiguous by the absence of any governing words before the word " explosions."   Something must in any event be supplied, and the controversy is as to what this shall be.   The company claim to have a part of the first section repeated and read into the second, so that it shall read, " nor for loss in case

of fire happening by explosions of any kind whatever within the premises." The plaintiff contends that the simple insertion of the word "by" before the word "explosions" is all that is warranted. In the one case, the defendants are exempted from liability for this loss; in the other, it falls within the limit of their responsibility. If either of these constructions is equally sustained by the context, that must be taken which is the most favorable to the assured.

A careful examination of the question, convinces me that the exception covered by this section is to be restricted to losses arising from explosions, rather than extended to the much broader ground of losses by fire originating from explosions. The former is not only equally as well sustained, by the context, but even better than the other. It is evident that for complete sense, the introductory words of the clause must be repeated with each section. These introductory words stop with the word "loss." This company shall not be liable for loss, in case of fire happening by any insurrection, etc. This company shall not be liable for loss by explosions, . . . . nor by concussions merely. This company shall not be liable for loss, when the fire is caused by the fall of a building. This company shall not be liable for loss, where fire heat is used in any process, to the articles damaged by such process. This company shall not be liable for any damage by heat ·within the premises, without combustion. This company shall not be liable for loss, if the assured keep or use on the premises gun-powder, etc. Each section of the whole clause is thus set in the same frame, and it is made harmonious in construction throughout.

And, not only is this the correct grammar of the clause,— a not always potent argument in the law—but, to my mind, it conveys the actual sense of it. There is nothing in the clause itself, nor in the supposed purpose for which it was introduced into the policy, which leads to a different result. It cannot be urged that the excepted losses mentioned in this clause are those of fire alone. It is true that this is the case in all the sections, other than the one in question; but in this one, we clearly have the exception of losses by concussion merely; and losses by explosions within the premises are not out of place in connection therewith. Indeed, damage by these two instrumentalities are so quite alike, that the two are very nat-

urally associated together, and may well appear in conjunction with each other, in the midst of excepted losses by fire.

Nor are losses by explosion foreign to the risks assumed by insurance against fire.   They are like the damages by smoke and water, losses by theft, destruction by the falling of buildings, or injury by fire agencies without actual ignition, all of which are to be found among the losses excepted against, in clauses in policies of insurance similar to the one under consideration. Losses by explosions, as by concussions merely, which we find joined together in this policy, are thus proper subjects of exception from the general liability assumed thereby, and there is nothing which requires us to hold that more than this was intended to be covered.

Each case of this character must be determined. upon its own facts ; and, as no two policies are exactly alike, so there is little assistance to be derived from the authority of decided cases.   But the nearest which I find to the case in hand is the case of Commercial Ins. Co. v. Robinson, 64 Ill. 265 (16 Am. Rep. 557).   The policy there provided that the company should not be liable " for any loss or damage by fire caused by means of an invasion, etc. ; . . . . nor for any loss caused by the explosion of gun-powder, camphene, or any explosive substance, or explosions of any kind."   It was contended that the words, " explosions of any kind," protected the company from liability for loss by fire when the fire had been produced by an explosion.   But the court held that it merely secured exemption from liability for losses caused by explosions, and not from liability for losses by fire caused by an explosion. The case may well be consulted at length for a full discussion of this question.

The case of Boatman's F. & M. Ins. Co. v. Parker, 23 Ohio 85 (13 Am. Rep. 228), also bears somewhat closely upon the present case.   The clause of exemption there was as follows: " This company will not be liable for damage to property by lightning aside from fire, nor for any loss or damage by fire happening by means of any invasion, etc. ; nor for damage occasioned by the explosion of a steam boiler ; nor for damage resulting from such explosion, nor explosions caused by gun-powder, gas or other explosive substances."   It was held that this did not exempt the company from damage by fire resulting from

Referee's Report.

an explosion of gas. This decision is of peculiar interest and importance, because at the same term the case of Ins. Co. v. Foote, 22 Ohio 344, was also decided, a case which is much relied upon as materially extending the exemption of insurance companies from liability in cases of explosion. The two decisions by the same court at the same term were certainly not intended to be conflicting. The one, therefore, furnishes a check upon carrying the doctrine of the other too far, and, as thus qualified, the latter is not to be regarded as against the conclusions reached in the present case.

From these considerations, I am satisfied that the referee has properly construed the contract of insurance between these parties, and that there is nothing in the fact that the fire originated in the explosion of a lamp, to prevent the plaintiff's recovery.

The next exception undisposed of, is the tenth. In considering it, it is only necessary to add to what is said by the referee, that the character of the building, as a dwelling-house, was not necessarily changed because the basement was let to six Italians, who occupied it and boarded themselves. Nor is it shown by the evidence that the risk was, in fact, thereby increased, much less that the assured knew that it was so increased. . . . .

The court, however, proceeded to sustain certain of the exceptions, and re-committed the cause to the referee for a new trial. On September 3, 1889, the referee filed his second report, which in part was as follows:

1. . . . . The period during which the policy was in force, according to its terms, began on the fifteenth day of October, 1883, and continued until the fifteenth day of October, 1886.

2. On the sixth day of July, 1885, at about ten o'clock P. M., the building and contents were burned.

3. The fire was caused by the explosion of a lamp. . . . .

5. Notice of the loss was mailed at Scranton, addressed to the secretary of the Kittanning Insurance Company, Kittanning, Pennsylvania, on the eighth day of July, 1885, and received by said company, defendant, on or about the ninth day of July, 1885.

6. Proofs of loss were made and sworn to on the ninth day

Referee's Report.

of July, 1885, and were delivered to said company within a few days after the fire.

7. Some time after the fire and notice of the same, and proofs of loss received by the defendant, a Mr. Crawford came to Scranton to investigate the loss for the company defendant. He stated while here, that the company would settle the loss.

8. In accordance with the instruction of the court, the offer of the application is rejected, and bill sealed for the defendant. The application was not attached to the policy, and therefore, under the provisions of an act approved May 11, 1881, P. L. 20, was not admissible. The offer and objection were overlooked, for some reason, in making up the first report; it should have been rejected then.

9. The loss was payable by the terms of the policy, ninety days after complete proofs and adjustment of loss at Kittanning, Pennsylvania.

The defendant's counsel requests the referee to find the following conclusions of fact:

1. That under the terms of the policy of insurance, upon which suit in this case is brought, it is agreed between the parties, that payment of loss shall be made ninety days after complete proofs of loss and adjustment thereof at the office of the company at Kittanning, Pennsylvania.

Answer: This is affirmed. The plaintiffs have substantially complied therewith.[5]

2. That it does not appear, from the evidence, that payment was ever asked or claim presented for payment at the office of the company at Kittanning, Pennsylvania, as provided for in the policy.

Answer: This is denied.

3. That under the terms of the policy of insurance, under which suit in this case is brought, it is agreed between the parties that the company defendant shall not be liable for loss in case of fire happening by any insurrection, invasion, foreign enemy, civil commotion, mob, riot or any military or usurped power, or explosions of any kind whatever within the premises.

Answer: The language of the policy is not accurately quoted in this point. The exception provided for in the policy, is " loss occasioned by an explosion." The loss to Mrs. Heffron was occasioned by fire, and not by an explosion. The point is therefore denied.[4]

Referee's Report.

4. That the fire by which the property insured was destroyed, happened by the explosion of a lamp within the premises.

Answer: This is affirmed, under the instruction of the court. The loss, however, was caused by fire, not by an explosion.

5. That the assured made application to the defendant for insurance on her building occupied by her.

Answer: There is no evidence to sustain this point. A copy of the alleged application was not attached to the policy, and the offer thereof was rejected. The point is therefore denied.[2]

8. That the risk or hazard was increased within the knowledge of the assured, during the continuance of the insurance, without consent to such increased risk or hazard being indorsed on the policy, by the basement of the house being occupied by six Italians who boarded themselves, renting the same from the assured.

Answer: This is denied. There is evidence that the Italians were rooming in the house at the time the insurance was effected. The words, " used as a dwelling-house," are words of description, and not of warranty.[3]

12. The assured had her building insured as " occupied by the assured as a dwelling-house."

Answer: This is affirmed.

The referee finds that the defendant was indebted to the plaintiff in the sum of four hundred and eighty-one dollars and sixty cents ($481.60) on the eighth day of October, 1885. The prothonotary is directed to enter judgment in favor of the plaintiff in the sum of four hundred and eighty-one dollars and sixty cents ($481.60), with interest from the eighth day of October, 1885.[1]

To the foregoing report, the defendant filed exceptions, alleging that the referee erred, inter alia:

1. In directing judgment to be entered in favor of the plaintiff for $481.60, with interest, etc.[1]

4. In his answer to defendant's first request.[5]

6. In his refusal of defendant's third request.[4]

8. In his refusal of defendant's fifth request.[2]

10. In his refusal of defendant's eighth request.[3]

After argument, the court, ARCHBALD, P. J., on January 13,

Opinion of the Court.

1890, filed an opinion dismissing the exceptions and confirming the report of the referee. Judgment having been entered for the amount directed by the referee, the defendant company took this appeal, specifying that the court erred:

1–5. In dismissing the defendant's exceptions.[1 to 5]

6. In confirming the report of the referee and directing judgment to be entered thereon.

*Mr. Lemuel Amerman*, for the appellant.

Counsel cited, (1) as to the breach of warranty, as to occupancy: Smith v. Insurance Co., 32 N. Y. 399. (2) That the risk was increased by such occupancy: 1 Wharton on Ev., § 436; Mulvey v. Insurance Co., 5 Gray 541; Lyman v. Insurance Co., 14 Allen 327; Luce v. Insurance Co., 105 Mass. 297. (3) That the loss happening from an explosion, the company was not liable: St. John v. Insurance Co., 11 N. Y. 516; 3 Bennett's Fire Ins. Cas., 761; Milandon v. Insurance Co., 4 Rob. (La.) 15; Beaumont on Insurance, 37 et seq.; Insurance Co. v. Tweed, 7 Wall. 44.

*Mr. Charles H. Welles*, for the appellee.

Counsel cited, (1) as to the loss by fire resulting from an explosion: Boon v. Insurance Co., 40 Conn. 575; Commercial Ins. Co. v. Robinson, 64 Ill. 265 (16 Am. Rep. 557); (2) That the appeal brings up only questions of law: Bradlee v. Whitney, 108 Pa. 362; Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Brown v. Dempsey, 95 Pa. 243.

PER CURIAM:
On the argument at Bar,

Judgment affirmed.