AMERICAN PAPER PRODUCTS COMPANY, a Corporation, Respondent, v. CONTINENTAL INSURANCE COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed December 7, 1920.

1. **INSURANCE:** Indemity Insurance: Sprinkler Leakage Policy: Top of Hot Well Blown Off: Explosion. In an action upon a sprinkler leakage policy which indemnified plaintiff against all direct loss or damage by sprinkler leakage, except as provided in the policy, and one of the exemptions being "for loss caused by explosion," and the evidence showed that the steel top of a hot well used to change the water in the boiler, etc., which weighed some one hundred and fifty pounds, suddenly left its position breaking and tearing away nine one-half inch iron bolts, passing through the floor of said building, on through the roof thereof, tearing a hole five feet in diameter and landing some thirty-five to fifty feet away, caused by the sudden rushing of hot water from the boiler into the hot well, etc., *held* the hot well exploded, the term explosion meaning the sudden bursting or breaking up, or in pieces, from an internal or other force, and is not limited to those cases caused by combustion or fire.

2. ————: ————: ————: Exceptions in Policy in Event of Doubt Construed Strictly Against Insurer. While an insurance contract is construed so as to give effect to all of its provisions, if possible, and its terms are accepted in their plain and ordinary sense, yet, in construing exceptions inserted in the policy by the insurer which attempt to exempt it from certain specified risks, such exceptions, in the event of doubt, are to be construed strictly against insurer.

3. ————: ————: ————: Ambiguity in Language Construed in Favor of Insured and Against Insurer. Likewise, in the event of an ambiguity in the language used to limit the liability of the insurer, the language is to be construed in favor of the insured and against the insurer.

4. ————: ————: ————: Exception of Loss Caused Directly by Explosion: Loss by Leakage of Water Although Caused by Explosion Not Excepted. An exception, in a sprinkler leakage policy, of liability for loss caused by an explosion, *held* such exemption only covered such loss as the plaintiff's goods suffered directly by the explosion and not the loss by leakage of water that followed the explosion, although such leakage of water was caused by the explosion.

Appeal from the Circuit Court of Lincoln County.—*Hon. Edgar B. Woolfolk*, Judge.

AFFIRMED.

*Leahy & Saunders* for appellant.

(1) The demurrer should have been sustained at the close of the plaintiff's case because plaintiff's own evidence showed that it was within the exceptions of the policy of insurance. If this was true at the close of the plaintiff's case *a fortiori* it was true at the close of the whole case. Frisbie v. Fidelity Casualty Co., 133 Mo. App. 30; Cohn v. Nat. Ins. Co., 96 Mo. App. 315; German-American Ins. Co. v. Hyman, 94 Pac. 27; German Alliance Ins. Co. v. Hyman, 94 Pac. 27; Mitchell v. Potomac Ins. Co., 183 U. S. 42; German Fire Ins. Co. v. Roost, 45 N. E. 1097; Strong v. The Sun Mutual Ins. Co., 31 N. Y. 103; St. John, etc., v. The Amer. Mut. Fire and Marine Ins.

Co., 11 N. Y. 516; Evans v. The Columbian Ins. Co., 44 N. Y. 146; Hustice v. Phoenix Ins. Co. of Brooklyn, 175 N. Y. 292, and cases cited therein; Insurance Co. v. Boon, 95 U. S. 117; Hayward v. Ins. Co., 3 Keyes (N. Y.) 456; Hayward v. Ins. Co., 2 Abbot Decisions (N. Y.) 349. (2) The court erred in giving instruction No. 1 because all of the testimony in the case, both for the plaintiff and for the defendant, showed conclusively and beyond a doubt that the damage to the plaintiff's stock was caused by an explosion. Mitchell v. Potomac Ins. Co., 183 U. S. 42; St. John v. The Sun Mutual Ins. Co., 31 N. Y. 103; Hustice v. Phoenix Ins. Co. of Brooklyn, 175 N. Y. 292, and cases therein cited; Heuer v. Ins. Co., 144 Ill. 393. The court erred in giving instruction No. 2 because there was no evidence of any vexatious refusal to pay. Non-Royalty Shoe Co. v. Phoenix Assur. Co., Ltd., 210 S. W. 37; R. S. 1909, sec. 7068. The court erred in giving instruction No. 3 because there was no evidence that the damage to the plaintiff's stock was caused by anything but an explosion. Frisbie v. Fidelity Casualty Co., 133 Mo. App. 30; Cohn v. Nat. Ins. Co., 96 Mo. App. 315; Hustice v. Phoenix Ins. Co. of Brooklyn, 175 N. Y. 292, and cases therein cited. (3) The argument made by counsel for plaintiff was improper and highly prejudicial. Barr v. Quincy, O. & K. C. R. Co., 138 Mo. App. 471; Barnes v. City of St. Joseph, 139 Mo. App. 545. (4) The verdicts as received were both improper. Shohoney v. Q., O. & K. C. Ry. Co., 223 Mo. 649. (5) Defendant had a right to introduce depositions taken in the cause and to use admissions made in them. Bogie v. Nolan, 96 Mo. 85; Black v. Epstein, 221 Mo. 286.

*Leonard, Sibley & McRoberts* and *Shepard Barclay* for respondent.

(1) Ambiguity in the language of a policy, as to liability of the insurer, should be interpreted most favorably to the insured. Renshaw v. Ins. Co., 103 Mo. 611; Ethington v. Ins. Co., 55 Mo. App. 129; Sutton v. Ins. Co.,

208 S. W. 499; Malin v. Ins. Co., 219 S. W. 143; Rieger v. London Co., 215 S. W. 920; Union v. Colehouse, 227 Ill. 565; Baker v. Ins. Co., 157 Fed. 280. (2) The facts, which defendant claims amount to an "explosion," are not within established and ordinary meanings of that word, which import combustion in some form, which is absent here. Joyce, Insurance (2 Ed.), sec. 2768; Century Dictionary (1911) "Explode," p. 2083. (3) The burden of proof to establish the claim of exemption from liability on the ground of "explosion" was upon defendant, as the court instructed (Rec. p. 179). No error is assigned thereon. Joyce, Insurance (2 Ed.), sec. 3796a; Hester v. Fidelity Co., 69 Mo. App. 186; Van Valkenburgh, 70 N. Y. 605. (4) Exceptions of risks in insurance policies are to be construed strictly against the insurer. 16 A. & E. Ency. L. (2 Ed.), p. 863; Joyce, Insurance (2 Ed.), sec. 220; Laker v. Royal Union, 95 Mo. App. 353; Ethington v. Ins. Co., 55 Mo. App. 129. (5) As defendant admitted by its answer that the damage to plaintiff's property was caused by the "leakage of water," the issue whether that was within the exemption of the policy, as an "explosion," was one of fact, unless a verdict for plaintiff was directed as in our point 8. (6) Both parties having submitted the issue of "explosion" to the jury as a fact, defendant cannot properly except thereto on appeal, as plaintiff's testimony tends to show there was no explosion within the meaning of the policy, most favorable to the insured. Parties are bound on appeal by the positions they take in the trial court. Harper v. Morse, 114 Mo. 317; Green v. City, 106 Mo. 455; Ellis v. Harrison, 104 Mo. 270. (7) The proceedings show no minor errors warranting reversal, and the points assigned are not substantial and do not bear on the merits of the result. Gordnor v. Screw Co., 201 Mo. App. 349; O'Hara v. Lamb Co., 200 Mo. App. 292. (8) The damage to plaintiff's property by water is referrable to the leakage from the springing pipes as the direct cause. On the undisputed facts, the so-called

"explosion" was not a direct cause of any damage. Renshaw v. Ins. Co., 103 Mo. 595; Ins. Co. v. Willard, 164 Fed. 404, 212 U. S. 581; Ins. Co. v. Stanton, 191 Fed. 813; Joyce, Insurance (2 Ed.), sec. 2590; Ins. Co. v. Robinson, 64 Ill. 265; Heffron v. Ins. Co., 132 Pa. 580; Ins. Co. v. Parker, 23 Ohio St. 85; Baker v. Ins. Co., 157 Fed. 280; Ins. Co. v. Corlies, 21 Wend. 367; Briggs v. Ins. Co., 66 Barb. 325, 53 N. Y. 447; Vorse v. Ins. Co., 119 Iowa, 555.

BIGGS, C.—This is a suit upon a Sprinkler Leakage Policy which indemnified the plaintiff against all direct loss or damage by sprinkler leakage, except as provided in the policy. No question arises upon the form of the petition; nor over the fact that plaintiff's goods were damaged in the amount claimed by reason of the giving way of the sprinkler system, thereby flooding plaintiff's premises with water.

The answer was a general denial, coupled with a special defense as follows:

That it was provided that said policy was made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions, among others, to-wit:

"This company shall not be liable for loss by fire, however caused; nor for loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire; nor for loss due to stoppage or interruption of any work in plant unless liability for such loss is specifically assumed herein; nor for loss caused by lightning (whether fire ensues or not), cyclone, tornado, windstorm, earthquake, explosion or blasting . . . nor for loss caused directly or indirectly by the fall or collapse of any building or any part thereof, unless such fall or collapse is caused by the accidental leakage of water from automatic sprinkler system, or the tanks supplying it."

Defendant further states that on or about the 20th day of February, 1916, the plaintiff was engaged in the business of the manufacture of fiber shipping cases, in the building described in said policy and contract, and that at its said place of business maintained and operated in connection with its said business a stationary engine operated by steam, in connection with which the said plaintiff maintained and operated a steam boiler; that said steam boiler was at said time connected by a steam and water pipe with an iron blow-off and drainage catch basin which were situated underneath the board flooring of the boiler room, or room in which said boiler was situated; that the plaintiff at said time maintained as a part of the water sprinkler system in its said place of business, a water pipe suspended from the ceiling of the said boiler room; that said blow-off tank on said day exploded, thereby breaking and opening the said sprinkler water pipe, and that the discharge and leakage of water described in plaintiff's said petition was caused by plaintiff's said sprinkler water pipe being broken, as aforesaid, by said explosion; that the said damage described in plaintiff's petition, was, if any, caused by said explosion on the premises of said plaintiff, and the said alleged damage is not within the terms of the agreement between plaintiff and defendant, as aforesaid, and this defendant is not liable therefor.

By a reply, plaintiff admitted that it operated a steam engine and boiler, and that it maintained a hotwell or cooling basin and a sprinkler system, but denied that the hot-well exploded, and declared the fact to be that it was jarred apart or ruptured by internal pressure or in fact, entirely distinct from explosive force, and plaintiff denied that this was the proximate cause of the leakage of water and of the consequent loss or damage complained of.

The cause was tried before a jury, to which was submitted the issue of fact as to whether or not there was an explosion which caused the loss. The jury returned

a verdict for the amount claimed, $1754.71, and for attorney's fees, and damages for vexatious delay in payment. After a voluntary *remittitur* of the items of attorney's fees and damages, judgment was entered for plaintiff for $1754.71, from which judgment the defendant has appealed after taking the customary steps.

Defendant first asserts that under the uncontradicted evidence and the physical facts, there was an explosion of the hot-well, as that term is ordinarily used and understood, which explosion caused the water pipe of the sprinkler system to break, resulting in the damage, and for which it is not liable under the exception stated in the policy, and that, therefore, its demurrer to the evidence should have been sustained. Other incidental alleged errors it will be unnecessary to notice, considering the view we take of the case and the evidence.

There is little dispute over the essential facts. Plaintiff maintained at its plant an engine and boiler room in a one-story frame building, in the basement of which was stored the paper stock that was damaged by water. The building was equipped with an automatic sprinkler system, the sprinkler pipes being about one foot below the ceiling, which was twelve feet from the floor. At a certain degree of heat the sprinkler heads open, and under pressure water flows from the pipes and floods the building, thereby extinguishing the fire. About three feet from the steam boiler which was situated in this boiler room and under the floor of the boiler room embedded in the ground, was what is termed a "hot-well," the top thereof being about one foot under the surface. This hot-well is connected with the boiler by a pipe and is also connected with the sewer, its object being to change the water in the boiler, letting the impurities of the water that settle in the bottom of the boiler flow out through the hot-well into the sewer. This hot-well is constructed of iron and steel, having a steel top one-half inch thick and thirty inches in diameter, and which is fastened to the flanges of the hot-well by

means of nine iron bolts one-half inch thick, the said top weighing from 150 to 200 pounds.

In the early morning of February 20, 1916, this 150 or 200 pounds steel top of the hot-well suddenly left its position, breaking and tearing away nine one-half inch iron bolts, passed through the floor of the building, on through the roof thereof, tearing a hole five feet in diameter, and landed upon a railroad track some 35 to 50 feet away.

Plaintiff's expert witness testified on cross-examination, that it would require a pressure of 495,000 pounds to release the top of this hot-well. In its course upward it broke the heavy timbers of the roof and also one of the water pipes of the sprinkler system, which immediately started the flow of water, resulting in the damage to plaintiff's property. The accident is explained by expert witnesses for the plaintiff and also for the defendant as being caused by the cocks in the pipe connecting the boiler with the hot-well being suddenly opened and thereby allowing hot water from the boiler to be rushed with terrific power through the pipe into the hot-well, the water in the boiler being at a high temperature with a terrific power of steam behind it. The water in the hot-well being cool and this volume of hot water from the boiler being suddenly forced into the cold water caused, according to defendant's witnesses, an explosion. By plaintiff's expert witness it is called a water hammer, which in his opinion might result in the cover of the hot-well being forced from its position, which was termed by the witness a rupture.

Whatever technical term may be given to the occurrence by experts, we do not see how reasonable minds can differ over the question as to whether or not there was an explosion of this hot-well when that term is given its ordinary meaning. It may be granted that the sudden rushing of the hot water from the boiler into the hot-well caused what the engineer termed a "water hammer." The water hammer was of such a character and

was so great as to cause the hot-well to explode. It is conceded that the top of this hot-well, weighing some 150 pounds, suddenly broke loose, breaking the half-inch bolts with which it was fastened, passed through the floor and the roof of the building, landing from 35 to 50 feet away.

Webster defines ''explosion'' thus: ''The act of exploding, bursting with a loud noise or detonating sound; a sudden inflaming with force and a loud report, as the explosion of gunpowder; the shattering of a boiler by a sudden and immense pressure, in distinction from rupture.''

The Century Dictionary defines the word as follows: ''The sudden bursting or breaking up, or in pieces, from an internal or other force; a blowing up or tearing apart, as by an explosion of a steam boiler.''

Plaintiff would limit the meaning of the word ''explosion'' to those cases caused by combustion or fire. But we think this is a narrow view of the word and is not the meaning generally given to the term ''explosion.'' And it is admitted that in giving to it a meaning, we must give to it its ordinary and accepted meaning. Of course, an explosion is frequently caused by combustion, but not necessarily so. Chemicals frequently explode and boilers explode by reason of terrific pressure of steam against the sides of the boiler. So this hot-well exploded by reason of the terrific rush and pressure of hot water and steam into the confined space within it and coming into contact with the cold water therein. At the time, the plaintiff after an investigation, denominated the occurrence an explosion in making its claim on the defendant. Even plaintiff's counsel so considered it in corresponding with defendant in reference to the loss. We think the evidence in the case on behalf of plaintiff, together with the physical facts, show conclusively that the hot-well exploded, and the lower court was not warranted in submitting such issue to the jury.

Plaintiff, however, contends that under the admitted facts in the case there is a liability under the policy, even though there was an explosion, and that therefore the judgment in the case was for the right party and should be affirmed. This by reason of the fact that the exception contained in the policy is not such as to exempt the company from liability for the loss complained of. In other words, the language of the exception only exempts defendant from loss directly caused by the explosion, and not for loss by leakage of water which takes place as a result of the explosion. The explosion did not directly cause any damage to plaintiff's stock of goods, but the entire damage was caused by the leakage of the sprinkler system which ensued as a result of the explosion.

The policy provided that the company shall not be liable for loss (1) by fire, however caused; (2) nor for loss resulting from a leakage of water, if such leakage is caused *directly or indirectly* by fire; (3) nor for loss due to stoppage of work, etc; (4) nor for loss caused by lightning, cyclone, . . . *explosion,* etc; (5) nor for loss caused *directly or indirectly* by invasion, insurrection, riot, etc; (6) nor for loss by theft; (7) nor for loss caused directly or indirectly by the neglect of the insured to use all reasonable means to save and preserve the property; (8) nor for loss caused *directly or indirectly* by the falling or collapse of any building," etc. (Italics ours).

It should be noted that the part of the exception relied on and standing alone is an exemption from loss caused by an explosion, and not an exemption from loss resulting from leakage of water caused directly or indirectly by an explosion. If the clause read: "Nor for loss by leakage of water caused directly or indirectly by explosion," there would be no doubt of defendant's exemption from liability under the admitted facts of the case.

While it is true that an insurance contract, like other contracts, is construed so as to give effect to all of its

provisions if possible and its terms are accepted in their plain and ordinary sense, it is equally true that in construing exceptions inserted in the policy by the company which attempt to exempt it from certain specified risks, such exceptions, in the event of doubt, are to be construed strictly against the insurer. [Laker v. Royal Ins. Co., 95 Mo. App. 353, 75 S. W. 705; Joyce on Insurance (2 Ed.), page 579.] Likewise in the event of an ambiguity in the language used to limit the liability of the insurer, the language is to be construed in favor of the insured and against the insurer. [Renshaw v. Ins. Co., 103 Mo. 611, 15 S. W. 945].

Bearing these rules in mind, is it clear that it was intended that the policy should not cover the loss by leakage of water caused by an explosion, when it provided "nor for loss caused by explosion?" Shall the law by implication write into the exception the words "by leakage" preceding the word "caused."? We think not. When the company exempted itself in the same paragraph of exceptions from loss by fire, it very plainly stipulated against "loss by fire, however caused, and from loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire." But when it came to the exemption on account of an explosion, all reference to leakage is omitted and the language used is "nor for loss caused by an explosion."

Having in mind the rules of construction in such cases, we think this exemption only covered such loss as the plaintiff's goods suffered directly by the explosion, and not the loss by leakage of water that followed the explosion, although such leakage of water was caused by the explosion.

We are without authority in this state. but similar provisions in policies have been thus construed in other jurisdcitions.

The case of Commercial Insurance Company v. Robinson, 64 Ill., 265, 16 Am. Repts. 557, was a suit on a fire policy, which provided that the company should not

be held liable "for any loss caused by the explosion of gunpowder, camphene, or any explosive substance or explosion of any kind." It was held that the company was not exempted by such clause from liability for losses *by fire* caused by explosion, but only from liability for losses occasioned by the explosion itself. The Court, page 268 of the opinion says: "It will be observed that, in a clause of the policy preceding the one under consideration, the company stipulated that it should not be liable 'for any loss or damage *by fire* caused by means of an invasion, insurrection,' etc. Here exemption is specially secured against liability for losses by fire caused in a certain manner. But the clause under consideration leaves out the words 'by fire.' It secures exemption from liability for losses caused by explosion, but not from liability for losses *by fire* caused by explosion. The difference in phraseology between the two clauses is so marked, that, when we consider their connection with each other we cannot resist the conclusion that the difference was intended."

The court in this Illinois case, page 270, further says: "But, say the counsel for appellant, this company does not propose to insure against losses by explosions, but only by fire, and the clause, construed as we construe it, is unmeaning, or at least useless. But not so. The clause was designed to apply to all cases where the explosion was the immediate cause of the loss. Suppose fire is carelessly applied to powder or other explosive substance. An explosion follows which rends furniture and building. This explosion is the result of the ignition of the explosive material, and it might be claimed that the loss caused thereby was a loss caused by fire. The courts might not so hold, independently of the clause in the policy, but we can well understand, when we examine these policies, that the insurer may have inserted this clause for the purpose of leaving no room for argument or doubt. Again, suppose a case where a fire is speedily subdued, but before it is, it has ignited powder

and an explosion has taken place which has caused much damage but has not extended the fire. In such a case the company would "claim they were protected by this clause from the liability for the consequences of the explosion."

A case arising out of the San Francisco earthquake came before the Federal Court of Appeals, being the case of Williamsburg City Fire Insurance Company v. Willard, 164 Fed. 404, 90 C. C. A. 392. In this case the exemption clause relied on by the insurer provided that it should not "be liable for loss caused directly or indirectly by invasion," etc; or "for loss or damage occasioned by or through any volcano, earthquake," etc. Insured's property was not injured by the earthquake, but the earthquake caused a number of fires to start, and by reason of the conflagration insured's property was destroyed. The court held that the policy should be construed most strongly against the insurer, and that the exception exempted only from liability for loss caused directly by the earthquake, and that a loss indirectly caused by the progress of the fire from a distance, although originally started by an earthquake, was not within the exception, and that the judgment of the lower court holding the insurer liable was affirmed.

Referring to the exemption clause, the court in this Willard case, page 405, says: "Standing by itself and without reference to preceding clauses of the insurance policy, the plain meaning of 'this clause would be that the insurer does not assume liability for loss or damage occasioned by any of the violent disturbances of nature so enumerated; but, as it is explicitly stated in the policy that the insurance is against direct loss or damage by fire there must be read into the clause under consideration the words 'by fire' so that it shall read 'or for loss or damage by fire occasioned by or through any volcano, earthquake, hurricane,' etc, for it must be that the sole purpose of the exception is to specify certain losses by fire not insured against."

There was an effort made to have the Supreme Court of the United States review this case by writ of *certiorari,* but the Court declined to grant the writ. [Insurance Company v. Willard, 212 U. S. 581.]

In the case of Heffron v. Insurance Company, 132 Pa. St. 580, the policy provided: "Nor should the company be liable for loss in case of fire happening by any insurrection, invasion, etc.; nor explosions of any kind whatever within the premises." It was held that this exemption did not cover a loss of the property insured by a fire resulting from the explosion of a lamp. The court in construing this exception held that it only applied to losses caused directly by an explosion, and did not cover a loss from fire occasioned by an explosion.

In the case of Insurance Company v. Parker, 23 Ohio St. 85, the exemption clause provided: "This company shall not be liable for damage to property by lightning aside from fire, nor for any loss or damage by fire happening by means of any invasion, etc; nor for damage occasioned by the explosion of a steam boiler; nor for damage resulting from such explosion, nor explosions caused by gunpowder, gas or other explosive substances." It was held in this case that this clause did not exempt the company from damage by fire resulting from an explosion of gas.

We are aware that other courts have held the contrary. However, we agree with Mr. Joyce when, after reviewing all the authorities he says: "It seems from a careful examination of all the decisions that the rule of the Illinois Court (Commercial Ins. Co. v. Robinson, supra) is most reasonable. It certainly is more in line with ordinary rules governing the construction of contracts of insurance and exceptions therein; it is more consistent with justice, and more in accord with the apparent intention of the parties. These provisions are inserted by the assurer, and in case of doubt they should be construed strictly against him, nor should they be extended by implication so as to embrace cases which

are not clearly within the exception. The insurer should not be permitted to insert clauses with equivocal meanings calculated to lead the insured to reasonably understand one thing and then rely upon the courts to give by implication an entirely different construction. The insured has a right to rely upon the contract as made and can reasonably be justified in assuming that in omitting the words 'by fire' the insurer was content to leave it to the courts to determine the proximate cause of the loss, and to grant such remedy as the contract calls for under a fair and reasonable construction, having in view the general rule which obtains in construing exceptions with reference to the words used to express the parties' intentions, for it is clearly within the power of those contracting to expressly provide in clear and unequivocal terms exactly what is intended.'' [Joyce on Insurance (2d. Ed.), par. 2592, page 4308.]

We accordingly hold that on the facts admitted plaintiff should recover, and the judgment being for the right party should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.

*Reporter's Note*: A writ of *certiorari* was issued in the above cause by the Supreme Court; but on hearing, the writ was quashed, November 30, 1921. See 235 S. W. Rep. 88.