AMELIA K. MORIE, PLAINTIFF-RESPONDENT, v. NEW JERSEY MANUFACTURERS INDEMNITY INSURANCE COMPANY, DEFENDANT-APPELLANT, AND AMELIA K. MORIE, PLAINTIFF-RESPONDENT, v. CHARLES NESI, TRADING AS NESI'S SUNOCO SERVICE STATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1957—Decided December 18, 1957.

72

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. J. Peter Davidow* argued the cause for appellant.

*Mr. Lawrence N. Park* argued the cause for respondent (*Messrs. Lipman & Casella,* attorneys; *Mr. Philip L. Lipman,* of counsel).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Plaintiff sued defendant insurance company under its comprehensive automobile liability insurance policy to recover for damage to her automobile caused by an explosion. The company answered and by way of affirmative defenses alleged, among other things, that the damage was the direct result of a mechanical failure and not explosion and was excluded from coverage by the express terms of the policy. By separate complaint plaintiff sued defendant Nesi, trading as Nesi's Sunoco Service Station, charging him with having negligently serviced the automobile, with the result that an explosion occurred which damaged the car while in his custody. His answer denied negligence, and alleged that the work was done in a good and workmanlike manner, and the explosion in no way related to that work.

The two complaints were consolidated for trial. The jury returned a verdict of no cause of action in Nesi's favor and of $1,500 against the insurance company. The company

appeals from the judgment in plaintiff's favor. On the day of the argument plaintiff filed a "remittitur" (in effect a consent) directing that her judgment be reduced to $900.

On the morning of January 10, 1956 plaintiff, discovering that she could not start her automobile, phoned Nesi at his service station, who thereupon sent his employee Coslot, with booster battery and cables, to start the car. He did so and, after driving plaintiff to her hairdresser's in her car, took it to the service station where Gefner, an automobile mechanic in Nesi's employ, installed a new battery. What happened then may best be described in Gefner's and Coslot's words. Gefner testified:

"I turned the key on, and I stepped on the accelerator * * * and she started right off and, holy mackerel, what a bang. * * * That noise was so loud that it scared me half to death. It shook the whole building, and pieces flew all over, and oil came out from the transmission, and there was an oil can on the side of the floor, and there one piece hit it, and bent the oil can right in.
* * * * * * * *
There was parts flew all over the place, and oil over the whole floor. There was a piece right up in the ceiling, * * *."

Coslot said there was a "loud bang," a "terrific bang," and "pieces of metal flew all over the floor, and one flew up to the ceiling and stuck there."

There is no dispute that the damage to plaintiff's car was confined to the dynaflow transmission and its housing. None of her witnesses saw any signs of carbon or burn marks, either on the parts strewn over the garage floor and those left intact in the car, or on any part of the car. Nor did Professor Schneider, an expert metallurgist, who testified for the insurance company. However, he had not examined the damaged parts nor the car until some five months after the occurrence and after they had apparently been cleaned. He testified that the damage was the result of a mechanical failure caused by centrifugal force and not by an explosion. A portion of the dynaflow transmission —the torque converter which is immersed in some 11 quarts of oil—had broken away (by centrifugal force, he said) and shattered the 3/16" housing. Only the bottom part of this assembly, made of cast metals, was damaged. Al-

though on direct examination he spoke of "a metal failure," he admitted on cross-examination that there was nothing wrong with any of the metals used in the assembly; nothing in his scientific examination of the pieces could lead to any conclusion other than that the metal was in perfect condition.

The court denied defendant insurance company's motions for dismissal made at the close of plaintiff's case and of the entire case.

Plaintiff claims that the damage to her automobile was caused by an explosion within the language of coverage D of the policy, which reads:

"Coverage D—Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset: To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

Defendant counters with the contention that the damage was caused solely by mechanical breakdown or failure, within the purview of subparagraph (j) of the "Exclusions" clause, which is separate and distinct from the main clause of the insurance agreement providing insurance against damage resulting from an explosion. The exclusionary clause reads as follows:

"This policy does not apply:
(j) under coverages D, E, F and G, to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy;"

 Coverage D unquestionably insured against damage caused by explosion. However, plaintiff's only affirmative burden was to show "direct and accidental" damage to the automobile. It was not her affirmative burden to prove that the loss was due to an explosion. The significance of an explosion under the language of the policy, from the standpoint of plaintiff's affirmative case, was to preclude

any attempt by the company to avoid liability under the exception for collision or upset in coverage D by a contention that an explosion, if it had occurred, came within that exception. The burden was on plaintiff to bring herself within the provision of that clause. Subparagraph (j) of the exclusionary clause saved the company from liability where the damage was due to mechanical breakdown or failure, unless the mechanical breakdown or failure was, in turn, itself the result of other loss covered by the policy— such accidental loss as an "explosion." The burden was upon the insurer to establish its affirmative defense by proving that the loss fell within that specific policy exception. Exclusionary clause (j) is, in fact, a condition subsequent of the insurance contract, constituting a matter of defense which must be pleaded by the insurer to be available as a means of defeating recovery under the policy, and the burden of establishing that defense is upon the party pleading it. *Center Garage Co. v. Columbia Insurance Co.,* 96 *N. J. L.* 456 (*E. & A.* 1921); *Bosshardt v. Commercial Casualty Ins. Co.,* 124 *N. J. L.* 54 (*E. & A.* 1940); 21 *Appleman, Insurance Law and Practice,* § 12096, *p.* 12 (1947); *cf. Whittle v. Associated Indemnity Corp.,* 130 *N. J. L.* 576 (*E. & A.* 1943).

Defendant first asserts that its motions for dismissal should have been granted, since plaintiff failed to meet her burden of proving an explosion. On appeal we consider only the latter motion and must accept as true all evidence which supports the view of the party against whom the motions were made. We must also give plaintiff the benefit of all legitimate inferences which may logically be drawn from the proofs as they stood at the close of the entire case. *Melone v. Jersey Central Power & Light Co.,* 18 *N. J.* 163, 170 (1955), affirming 30 *N. J. Super.* 95 (*App. Div.* 1954); *Guzzi v. Jersey Central Power & Light Co.,* 20 *N. J. Super.* 296, 301 (*App. Div.* 1952), reversed on other grounds 12 *N. J.* 251 (1953); *Beck v. Monmouth Lumber Co.,* 137 *N. J. L.* 268, 271 (*E. & A.* 1948).

At the very outset it must be noted that defendant company misconceives the insurance policy in assuming that

plaintiff had the burden of proving an explosion. We have already noted that plaintiff's only burden was to prove direct and accidental loss or damage not caused by collision or upset. There being not the slightest suggestion of collision or upset here, plaintiff's affirmative case was met by the testimony as to the physical event itself, described above. Clearly this was, on its face, direct and accidental damage to the automobile. The burden of establishing the operative facts under the exclusionary clause resting, as we have pointed out, on defendant, this must be deemed to include—the defense being loss by mechanical breakdown or failure—the negating of a causation of such breakdown or failure by explosion where, as here, there is a suggestion in the surrounding circumstances of a possibility of such an hypothesis. That is implicitly the obligation of the defendant under the exception incorporated in the exclusionary clause of causations of mechanical failure, etc., attributable to loss risks covered by coverage D. The defendant's burden under an exclusionary clause logically extends to all the conditions expressed therein for application of the exclusion.

We therefore conclude, as to this first branch of the appeal, that the court was bound to deny defendant's motion to dismiss, whatever may be thought of the sufficiency of the proofs to establish an explosion, insofar as the argument is premised on the contention that it was plaintiff's affirmative burden to prove an explosion.

However, defendant also contends that at the end of the entire case the only competent proof as to the cause of the accident was that it was brought about by mechanical failure alone, without the possibility of an explosion, and that this called for a dismissal. This requires that we first consider the meaning of "explosion." The insurance company will not be heard to say that by "explosion" it meant anything more than the common understanding of the term. The meaning of the word is not to be determined by any particular scientific test or measurement, but by the common experiences of men in matters of that sort. "Explosion" is not, therefore, what some scientist would define it to be, but what the ordinary man would understand it to mean.

In short, the word is to be construed in its ordinary and popular sense. *Mitchell v. Potomac Ins. Co.*, 183 *U. S.* 42, 52, 22 *S. Ct.* 22, 46 *L. Ed.* 74 (1901) ; *Lever Bros. Co. v. Atlas Assurance Co.*, 131 *F. 2d* 770, 775 (7 *Cir.* 1942).

■ "Explosion," as commonly understood, is "a violent bursting or expansion, with noise, following the sudden production of great *pressure* * * * or a sudden release of *pressure*." (Italics ours.) *Webster's New International Dictionary (2d ed., unabridged)* ; *Lever Bros. Co. v. Atlas Assurance Co.*, above; *American Paper Products Co. v. Continental Ins. Co.*, 208 *Mo. App.* 87, 225 *S. W.* 1029 (*Ct. App.* 1920) ; *Allen v. Insurance Co. of North America*, 175 *Pa. Super.* 281, 104 *A. 2d* 191 (*Super. Ct.* 1954) ; and see 35 *C. J. S. Explosion p.* 216 (1943) ; 22 *Am. Jur., Explosions and Explosives*, § 2, *p.* 126 (1939).

■ An explosion may be caused by combustion, and frequently is, but combustion is not necessarily the only cause of such an occurrence. There need not be a fire or combustion before it may be said that an explosion has occurred. *American Paper Products Co. v. Continental Ins. Co.*, above; 6 *Couch, Cyclopedia of Insurance Law* (1930), § 1279, *p.* 4705. An explosion may take place by reason of the creation and transmission of pressure (as of air, gas or liquid), as well as by ignition or combustion.

In the present case, we have a further clue to intent as regards "explosion." The policy contemplates mechanical breakdowns or failures as exclusionary phenomena, distinguishable from explosions. We think the hypothesis suggested by defendant, *i. e.*, centrifugal force inducing a violent breakup and dispersion of the pieces of the transmission, would be a mechanical breakdown separate and distinct from the concept of an explosion under the policy.

■ Giving plaintiff the benefit of the rule applicable on a motion for involuntary dismissal, there was enough in the testimony for the case to have gone to the jury and for it to have drawn a permissible inference that the breaking up of the transmission assembly was caused by pressure built up within the unit and which burst it asunder. The evidence presents the dramatic incident of a violent bursting,

accompanied by loud noise, with resultant disintegration of part of the dynaflow transmission unit. Added to this testimony on the part of plaintiff's witnesses, was that of defendant's witnesses: Fresne, in the auto repair business for 25 years, who testified there was nothing defective about the parts of the car, and Schneider, the expert, who said there was nothing wrong with the metals in the transmission assembly. We think there was sufficient to enable the jury to find there was an accidental loss of a kind different from the mechanical breakdown diagnosed by defendant's expert witness.

*Parker v. Niagara Fire Ins. Co.,* 30 *N. J. Super.* 585 (*App. Div.* 1953), on which the insurance company relies, is not applicable under the particular facts of this case. The same policy provisions were involved, but the case did not deal with a violently injurious phenomenon at least outwardly resembling an explosion. The evidence there was completely devoid of any explanation by plaintiff of the cause of the damage or of any evidence of facts equivalent to an accident in the common signification of that term.

Defendant company next contends that the trial court nullified its expert, Schneider, by limiting his testimony and commenting adversely upon it. The remarks of the judge while Schneider was on the stand reflected a lack of credence in his theory of the case. For example, when Schneider offered to explain what he meant by a "mechanical defect" by illustrating the point with reference to the rotating parts of the dynaflow transmission, the court interjected "You are theorizing now, of course, aren't you, Doctor," followed by, "Doctor, have you ever known the fact, that the fact is opposed to a theory, in other words, the unusual?" A few moments later he asked of the witness, "You honestly believe that one of those aluminum torque gears could break away from its moorings by centrifugal force and shatter the housing * * *? Do you believe that centrifugal force will cause a shattering of a cast iron housing, with pieces going all over?" From time to time we find the trial judge taking over the examination of the expert, and in a critical vein. These instances were, generally, not

reasonably necessary to clarify the testimony for the benefit of the jury.

Although all the instances mentioned (and others which might be added) were perhaps not prejudicial in themselves, yet, when taken together with what the trial judge said in his charge, we think they exerted a total cumulative prejudicial effect on the company's case. There are three aspects of the charge which deserve mention.

The first is the trial court's attempts to define "explosion." The judge gave the jury some ten definitions, varying in their components and some of them mentioning fire insurance policies (although the policy in question was a comprehensive automobile liability insurance policy), combustion and fire. Others included references to bursting, violent expansion of air, noise. This plethora of definition carried with it the potential of confusing and possibly misleading the jury. The purpose of a charge is to aid the jury in reaching a correct decision. To that end the court should state the law applicable to the case in simple, clear and readily understood terms. *Estelle v. Board of Education of Borough of Red Bank*, 26 *N. J. Super.* 9, 21 (*App. Div.* 1953), modified 14 *N. J.* 256 (1954); *Hoffman v. Trenton Times*, 125 *N. J. L.* 450, 452 (*E. & A.* 1940). The test of the sufficiency of instructions is "how and in what sense, under the evidence before them, * * * would ordinary men and jurors understand the instructions as a whole?" *Kargman v. Carlo*, 85 *N. J. L.* 632, 638 (*E. & A.* 1914). "The acid test is, would the jury be misled?" *Vadurro v. Yellow Cab Co. of Camden*, 6 *N. J.* 102, 108 (1950); *Middleton v. Public Service Co-ordinated Transport*, 131 *N. J. L.* 322, 323 (*E. & A.* 1944). But we need not stay to analyze the matter at length, for there was an even more serious prejudicial aspect to the charge. This relates to plaintiff's claim against Nesi—the second of the three matters we specifically note.

Nesi had moved for involuntary dismissal at the close of the entire case on the ground that there was no evidence of liability. The trial judge denied the motion. Nonetheless, after explaining to the jury that Nesi, as a bailee for

hire, had the duty of exercising ordinary care, and plaintiff had the burden of proving his negligence, he went on to say:

> "I don't have any recollection of any testimony in this case where anybody, either the plaintiff or the defendant, gave any testimony that Nesi did not install the battery properly or that he was negligent in any manner or fashion whatsoever."

He then told the jury that it was the judge of the facts and was to rely on its own recollection, but this was immediately followed by:

> "I restate, I have not the remotest recollection of any witness in this case showing any testimony tending to any negligence on the part of Nesi * * *."

And at the end of the charge, after dealing with the case against the insurance company, the trial judge said:

> "If you find in the first instance that Nesi was guilty of negligence and his negligence was the proximate cause, and I don't remember any such testimony, you come to the question of damages."

Again, "if you find there was negligence on the part of Nesi, and I don't think there was, and that negligence was the proximate cause—you are the judges of whether there was or wasn't," then the jury was to return a verdict against Nesi.

Despite his attempt at neutralization by instructing the jury that it was judge of the facts and was to rely on its own recollection of the testimony, the trial judge unmistakably hammered home his opinion that Nesi was not liable. It would appear that with so strong a view of the testimony, the court should have allowed Nesi's motion for involuntary dismissal. Be that as it may, in our view the judge exceeded the bounds of fair comment on the testimony and directed the jury to its verdict in Nesi's favor. True, the insurance company cannot appeal from the judgment reflecting that verdict, but it has every right to argue that in the measure the judge stressed his conviction that

Nesi was free of negligence, he by so much turned the jury's mind toward making an award of damages under the insurance policy in plaintiff's favor. Of her he said:

"* * * Mrs. Morie has some real rights. She had a good automobile. She did nothing wrong. She was at the hairdresser's. She has some damage to the vehicle and she says she bought protection for that and she made a contract."

All of the foregoing must be considered in the light of the third objectionable aspect of the charge, to which we now turn our attention. In dealing with the suit against the insurance company, the court told the jury that here plaintiff's claim was based on breach of contract. The gist of the suit, he said, was what was meant by "explosion." There followed the lengthy exposition of possible definitions, already referred to. The trial judge next reviewed the testimony about the installation of the battery, the starting of the car, the loud report and the flying debris. He then stated, "It sure sounds like an explosion to the court," but cautioned the jury that it was not to be swayed by him but to go by its recollection of the testimony. After this he observed that the insurance company had a right to its day in court and explained that

"* * * they say it was not an explosion, it was a mechanical failure, *theorizing* that there was some centrifugal force. If you think that is so, don't *theorize*, but go by your testimony. You have to decide, Was there or was there not an explosion. If there was, that is dispositive of all." (Italics ours.)

Shortly after this the trial judge declared, "I personally think there was an explosion," adding, however, that the jury was not to go by what he said; "you will not hurt me in any manner or fashion."

In New Jersey a trial judge unquestionably has the right, and in certain cases perhaps even the duty, to make such comments on the testimony as he thinks necessary or proper for the instruction of the jury. He may intimate his opinion as to the weight of the evidence whenever he

believes it is required or necessary for the promotion of justice, so long as he leaves it to the jury to determine the facts and draw its own conclusions. But the right to comment on the evidence and to intimate an opinion is not without limit; it may be exercised only where its purpose is to assist the jury and not to control its deliberations and findings. *Hare v. Pennell*, 37 *N. J. Super.* 558, 566-567 (*App. Div.* 1955); *Davis v. Gibbs*, 23 *N. J. Super.* 558, 562 (*App. Div.* 1952); *Jones v. Lahn*, 1 *N. J.* 358, 362 (1949); *Wilcox v. Christian and Missionary Alliance*, 124 *N. J. L.* 527, 530 (*E. & A.* 1940); *State v. Hummer*, 73 *N. J. L.* 714, 719 (*E. & A.* 1906); cf. *Isherwood v. Douglas*, 34 *N. J. Super.* 533 (*App. Div.* 1955). It is of the very essence of the right of trial by jury that the verdict be free and undirected. Where a charge has a natural tendency to interfere with the exercise of the jurors' unbiased judgment by reason of strong overemphasis of the court's opinion on the evidence, the inference of false direction and undue influence is entirely reasonable, if not, as here, irresistible. The court's statements that "It sure sounds like an explosion to the court," and "I personally think there was an explosion," considered in the context of the charge and the evidence in the case, went too far— particularly in the light of what it had to say about Nesi not having been negligent. The court may have told the jurors that they were the judges of the facts, but we are convinced upon a reading of the charge as a whole that it compulsively directed their collective mind to the verdict returned. We cannot set to one side our experience with and knowledge of the conduct of trials and discount the influence which the judge exerts over the average jury. Here the bounds of fair comment on the evidence were exceeded, to defendant's prejudice.

The judgment must be reversed and a new trial ordered as to the insurance company.